IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR BEDROSIAN, ) | |
| ) | Case No. 2:15-cv-05853 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE
UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

All United States citizens are required to report their foreign bank accounts to the Internal Revenue Service and to pay taxes on the income earned from those accounts. For decades, Arthur Bedrosian ("Bedrosian") failed to meet both requirements for his foreign bank accounts in Switzerland. He failed to satisfy his obligations for years after his accountant told him that his actions were illegal. Bedrosian only disclosed his most valuable UBS account and the income he earned from that and another UBS account after UBS warned him that it would be disclosing his account information to the United States government. The Internal Revenue Service assessed a penalty against Bedrosian for his willful failure to meet his foreign account reporting obligations, and the United States now seeks a judgment against him with respect to that penalty. Because no genuine disputes of material fact exist and the United States is entitled to judgment as a matter of law, its motion for summary judgment should be granted.

**ARGUMENT**

I. <u>Background Regarding Reporting Requirements for Foreign Accounts</u>

Generally, citizens of the United States are subject to taxes on their income, regardless of where it is earned. 26 U.S.C. § 61(a); 26 C.F.R. § 1.1-1(b). The Currency and Foreign

Transactions Reporting Act, also known as the Bank Secrecy Act ("BSA"), was enacted in 1970, in part to insure that citizens met the requirement to pay taxes on income earned abroad. *See* Pub. L. 91-508, 84 Stat. 1118; H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4395, 4397 (stating that the BSA was enacted to deal with major issues in law enforcement, one of which was the use of secret foreign bank accounts to evade income taxes). The purpose of the BSA is "to detect and prosecute criminal activity, pursue tax code enforcement, and engage in other 'regulatory investigations or proceedings.'" *United States v. Simonelli*, 614 F.Supp.2d 241 (D. Conn. 2008), *quoting*, 31 U.S.C. § 5311; *California Bankers Ass'n v. Shultz*, 416 U.S. at 26.

Congress recognized that citizens' use of undisclosed foreign financial accounts caused significant federal tax losses as well as a gaping disparity in the enforcement of the internal revenue laws. *Id*. at 4397-4398 (stating that one of the most damaging effects of the use of secret foreign accounts was the undermining of the fair administration of the tax laws, particularly through accounts in Switzerland, because such accounts are only available to the wealthy); *see also California Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974) (noting that the BSA was enacted after extensive hearings regarding the unavailability of foreign and domestic bank records for customers believed to be violating criminal or civil laws).

To fill the information gap, the BSA requires citizens of the United States to keep records and file reports with the Internal Revenue Service ("the Service"). Specifically, the BSA mandates that the Secretary of the Treasury require citizens who have interests in foreign accounts to keep records and report certain information about those accounts to the Government.

31 U.S.C. § 5314(a); *see also* 31 U.S.C. § 5314(b) (authorizing the Secretary to prescribe regulations implementing the statute). [1] Under the applicable regulations, citizens who had an interest in, or signature authority over, a foreign financial account are required to report the existence of the account and other information about the account, such as the account balance, to the Service each year. 31 C.F.R. § 103.24.[2] The reporting requirements apply to each foreign account that exceeded $10,000 during the calendar year. 31 C.F.R. § 103.27(c). The form used to report the information required by section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), commonly known as an "FBAR." Gov. Ex. N, Schedule B; 31 C.F.R. § 1010.350. An FBAR must be filed with the Service by June 30 for each account that met the reporting requirements during the previous year. 31 C.F.R. § 103.27(c).

Section 5321 authorizes the Secretary of the Treasury to impose a civil penalty on any person who does not comply with the reporting requirements described above. 31 U.S.C. § 5321(a)(5). The penalty is divided into two categories depending on the violator's level of culpability: 1) a penalty for non-willful violations which cannot exceed $10,000 and 2) a penalty for willful violations that cannot exceed the greater of $100,000 or 50 percent of the balance of the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C), (D).[3] There is no reasonable

---

[1] The requirement to report information regarding foreign accounts under Title 31 is in addition to the requirement for a taxpayer to report on a Schedule B that he owns foreign accounts and all income earned from such accounts. *See* https://www.irs.gov/uac/about-schedule-b-form-1040.

[2] The regulations governing the FBAR were published as cited above during the year at issue in this case, but were recodified in a new chapter in 2011. *See* 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c).

[3] Congress amended section 5321 in the American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, 1586 (2004), under the subtitle "Provisions Relating to Tax Shelters." The prior version of section 5321 only authorized a penalty for willful violations of the reporting requirements and capped the penalty at $100,000. 31 U.S.C. § 5321(a)(5) (2001). Congress explicitly increased the maximum penalty for willful violations to the greater of $100,000 or 50% of the bank account balance at the time of the violation. *See* 31 U.S.C. § 5321(a)(5).

cause exception for willful violations of the FBAR reporting requirements. 31 U.S.C. § 5321(a)(5)(C)(ii).

II. <u>Burden of Proof</u>

In a civil case with respect to the penalty for failing to meet the reporting requirements for foreign accounts, the burden of proof is preponderance of the evidence. *United States v. McBride*, 908 F.Supp.2d 1186, 1201 (D. Utah 2012), *citing*, *United States v. Williams*, No. 1:09-cv-437, 2010 WL 3473311 (E.D. Va. Sept. 1, 2010), *rev'd on other grounds*, *United States v. Williams*, 489 Fed. Appx. 655 (4th Cir. 2012). The applicable standard of review is *de novo*, meaning that the decision must be based on the evidence before the court. *Id*.

III. <u>Bedrosian is Subject to the Reporting Requirements of Section 5314</u>

Bedrosian was subject to the requirements of section 5314 in 2007 because he was a United States citizen who owned or had signature authority over a foreign account that had a balance of over $10,000 during the year. *See* 31 U.S.C. § 5314. It is undisputed that Bedrosian is a citizen of the United States. Stmt. of Facts ¶ 1. During 2007, Bedrosian owned two accounts at UBS. Stmt. of Facts ¶¶ 11, 12, 14, 15. Both of Bedrosian's UBS accounts had balances of well over $10,000 during 2007. Stmt. of Facts ¶ 19. Therefore, Bedrosian was subject to the reporting requirements of section 5314 during 2007 with respect to both of his UBS accounts. He was required to file an FBAR containing information about <u>both</u> accounts.

IV. <u>Bedrosian Failed to Meet the Reporting Requirements</u>

Because the reporting requirements in section 5314 apply to every foreign account, simply filing one FBAR reporting one account does not satisfy the requirements for other accounts. 31 C.F.R. §§ 103.24, 103.27(c). During 2007, Bedrosian owned two separate accounts at UBS, one ending in 5316 and one ending in 6167. Stmt. of Facts ¶¶ 14, 15. The

4

account statements for each account show that the accounts contained different assets and that each account contained subaccounts. Stmt. of Facts ¶ 14, 15. In addition, Bedrosian wrote separate letters to close each account and requested that the funds in each account be transferred to different banks, one foreign and one domestic. Stmt. of Facts ¶¶ 20, 21. He was required to report information regarding both of his UBS accounts to the Service.

Instead, he filed his 2007 FBAR months late and only reported one of his UBS accounts, the account ending in 5316. Stmt. of Facts ¶ 38. He failed to report his $2 million UBS account ending in 6167, which was by far the more valuable account. Stmt. of Facts ¶¶ 38, 39. Merely reporting one of his UBS accounts is insufficient to comply with section 5314. Because Bedrosian failed to report his UBS account ending in 6167, he violated the reporting requirements of the BSA.

As explained above, one purpose of the FBAR reporting requirements is to provide information to the Service that the Service would be unable to obtain elsewhere. It would be contrary to that purpose to find that Bedrosian complied with section 5314 by reporting only one of his foreign accounts and making the Service guess as to whether he owned any other accounts. Such a finding would encourage the precise conduct that led to the implementation of the reporting requirements by allowing citizens to selectively report their foreign accounts, escape liability for the failure to provide a complete report, and avoid paying taxes on income earned from those accounts. Bedrosian failed to meet the reporting requirements when he failed to disclose both of his UBS accounts.

V.  Bedrosian Willfully Failed to Report his UBS Account Ending in 6167

Section 5321 authorizes the Service to impose a penalty for willful violations of the reporting requirements, but the term "willful" is not defined in section 5321. *See generally* 31

U.S.C. § 5321. Because section 5321 involves civil penalties, the relevant definition of willfulness is the definition applied in other civil contexts, including tax collection and compliance with reporting requirements. *McBride*, 908 F. Supp. 2d at 1204. The Supreme Court has defined willfulness in civil cases as including both knowing and reckless violations of a standard. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007) (explaining that this definition is consistent with common law usage of the term, which treated reckless disregard of the law as a willful violation). In civil cases involving reporting or disclosing information to the Service, the term willfulness covers all conduct that is voluntary, instead of merely accidental or unconscious. *McBride*, 908 F.Supp.2d at 1205. A reckless disregard of a statutory duty will satisfy the willfulness standard. *McBride*, 908 F. Supp. 2d at 1204.[4]

"An improper motive or bad purpose is not necessary to establish willfulness in the civil context." *McBride*, 908 F.Supp.2d at 1204 (internal citations omitted). Moreover, direct evidence of intent is not required to establish a violation was willful - persons who fail to file an FBAR are not likely to admit they knew of the filing requirement and chose not to comply with it. *Id*. at 1205. Willfulness can be shown through circumstantial evidence and reasonable inferences drawn from the facts before the court. *Id*. In the current case, Bedrosian knowingly violated the reporting requirements because he filed an FBAR reporting only one of his foreign bank accounts. At a minimum, Bedrosian acted with reckless disregard when he failed to comply with the reporting requirements by reporting both of his UBS accounts.

---

[4] The relevant inquiry is whether the failure to disclose the information was purposeful instead of inadvertent, not whether the taxpayer subjectively believed he was not required to file an FBAR. *See Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (finding that after it is established that a failure to disclose information was done purposefully, whether the filer believed he was legally justified in withholding the information is irrelevant); *McBride*, 908 F.Supp.2d at 1210 (finding that if subjective intent were required, every person would be able to escape liability by avoiding learning of the reporting requirements).

### 1. Bedrosian Knowingly Violated the FBAR Filing Requirements

All citizens are charged with knowledge of the law as well as knowledge of the contents of documents that they sign. *McBride*, 908 F.Supp.2d at 1205-1206 (internal quotations omitted). Similarly, all taxpayers are charged with knowledge of the contents of their tax returns. *Id*. Tax returns contain a statement called the "jurat," located above the signature line, which states that the person signing the return certifies under penalties of perjury that he has examined the return and the contents are correct to the best of his knowledge. *See* Gov. Ex. N. A taxpayer's signature on a tax return sufficiently shows that he has knowledge of the instructions contained in the tax return. *McBride*, 908 F.Supp.2d at 1206. This is true regardless of whether an accountant or other professional prepared the return. *McBride*, 908 F.Supp.2d at 1206-1207; *United States v. Williams*, 489 Fed. Appx. at 659; *see also Novitsky v. Am. Consulting Engr's, LLC*, 196 F.3d 699, 702 (7th Cir. 1999) (explaining that arguments blaming accountants for inaccurate tax returns are not effective, because "[p]eople are free to sign legal documents without reading them, but the documents are binding whether read or not").

To hold otherwise would encourage taxpayers to sign tax returns without reading them in the hope of avoiding any negative consequences from inaccurate reporting. *Novitsky v. Am. Consulting Engr's, LLC*, 196 F.3d at 702. It would also allow taxpayers to fabricate stories that they did not read or understand the documents that they signed and such stories would be almost impossible to refute. *Id*. As the court explained in *McBride*, a taxpayer cannot escape liability by simply claiming he did not read what he was signing and therefore his violation of the law was not willful. *United States v. McBride*, 908 F.Supp.2d at 1207. The First Circuit Court of Appeals succinctly described this issue when stating that "innocence cannot outdistance ignorance." *Katz v. United States*, 321 F.2d 7, 10 (1st Cir. 1963) (stating that a return is not less

7

inaccurate because the taxpayer chose to be uninformed as to the extent that the return is inaccurate).

Bedrosian knowingly violated the reporting requirements when he failed to report his $2 million UBS account ending in 6167. He cannot claim that he was unaware that he was required to file an FBAR, because he did actually file one for 2007. Stmt. of Facts ¶ 38. Bedrosian knew that his UBS accounts contained over $1 million and that he had an account ending in 6167. Stmt. of Facts ¶ 40. Yet, he signed an FBAR that only reported one account that contained less than $1 million and with an account number ending in 5316. Stmt. of Facts ¶ 38, 39. Only a couple weeks after he filed his FBAR for 2007, which failed to report his account ending in 6167, he closed his account ending in 6167. Stmt. of Facts ¶ 20; *see* Gov. Ex. O. Bedrosian was therefore aware that he owned an account that he did not disclose on his FBAR.

He cannot escape liability for failing to disclose his account ending in 6167 by claiming that he did not read the FBAR before signing it. *See* Stmt. of Facts ¶ 47. He is charged with knowledge of the contents of the FBAR that he signed. To hold otherwise would encourage taxpayers to sign FBARs without reading them because they would know that there would be no adverse consequences for inaccurate reporting. This would allow taxpayers like Bedrosian to keep large foreign accounts secret and avoid paying taxes on income earned from those accounts.

The circumstantial evidence also supports the finding that Bedrosian knowingly failed to report his account ending in 6167. Bedrosian is a law school graduate and a corporate executive in a heavily regulated industry. Stmt. of Facts ¶¶ 2-10. Long before the year at issue, he routinely reviewed and signed complex financial statements, signed corporate contracts, and researched government regulations. Stmt. of Facts ¶¶ 8-10. It is not reasonable to believe that Bedrosian reviewed detailed corporate documents closely but ignored his personal documents.

Furthermore, in the early 1990s when Bedrosian finally told his accountant that he had foreign bank accounts, his accountant warned him that he had a problem because he had been breaking the law by not reporting them for years. Stmt. of Facts ¶¶ 23, 24, 27, 33. Instead of immediately rectifying the problem, Bedrosian decided to exacerbate it by continuing to break the law and leave the problem for his heirs to clean up after he died. Stmt. of Facts ¶ 28. Bedrosian was worried that there might be adverse consequences for his long history of non-compliance and wanted to avoid any repurcussions. *See* Stmt. of Facts ¶ 29. He knew that he had been breaking the law and would eventually have to "pay the piper." *See* Stmt. of Facts ¶ 42.

Although Bedrosian may claim that he cannot be held responsible for following his accountant's advice to continue breaking the law, there are several reasons that claim is meritless. First, Bedrosian has no evidence aside from his own self-serving testimony to show that his accountant actually gave him that advice. Because his accountant died before the tax year at issue and did not provide any written advice, it is impossible to corroborate Bedrosian's claim. Even assuming that Bedrosian accurately related his accountant's advice, he cannot escape liability by claiming that he blindly followed his accountant's advice to continue breaking the law.

If Bedrosian were permitted to do so, the FBAR penalty, and all tax penalties, would be rendered meaningless. Every taxpayer would claim it was his accountant's fault that he decided to violate the law after being told that what he was doing was wrong. In any event, Bedrosian had a new accountant for 2007, the year at issue, and did not discuss his deceased accountant's advice with his new accountant. Stmt. of Facts ¶¶ 31, 32. He therefore cannot rely on his

deceased accountant's advice for the year at issue here as a defense to his knowing failure to report his account ending in 6167.

Additionally, Bedrosian paid UBS to stop mailing any information about his accounts to the United States, even though he was concerned with the accounts' performance. Stmt. of Facts ¶¶ 16, 17. This was after Bedrosian read an article about the United States government attempting to trace postage meter numbers to banks in Switzerland. Stmt. of Facts ¶¶ 24, 25. Instead of receiving mail from UBS, Bedrosian met in person with his Swiss banker annually to review his accounts' performance. Stmt. of Facts ¶ 18.

Bedrosian knew that he had changed his UBS accounts from savings accounts to investments accounts intended to make a profit. Stmt. of Facts. ¶¶ 11-13. He also knew at least annually whether his UBS accounts were making money and that the government did not have a paper trail linking him to UBS. *See* Stmt. of Facts ¶¶ 16-18. Bedrosian recognized that there was no difference between his foreign and domestic investment income. Stmt. of Facts ¶ 36. He did not report the $220,000 in income that he earned on his UBS accounts in 2007 on his tax return, despite reporting his domestic investment income for that year. Stmt. of Facts ¶ 35. For 2003 through 2007, Bedrosian failed to timely report $375,000 in earnings from his UBS accounts. Stmt. of Facts ¶ 46. Although he eventually amended his 2003 through 2007 tax returns to report this income, he successfully avoided paying any tax on his earnings from his UBS accounts for decades prior to 2003. *See* Stmt. of Facts ¶ 43, 46.

The circumstances surrounding Bedrosian's application for the 2009 voluntary disclosure program also show that his failure to report his UBS account ending in 6167 was willful.[5] Bedrosian did not initially believe UBS was going to turn over his account information to the United States and applied to the program only after UBS warned him that his account information would be turned over. Stmt. of Facts ¶ 41. Similarly, Bedrosian waited until he thought it was likely that the Service would discover his noncompliance to amend his FBAR for 2007 to report both of his UBS accounts, file FBARs for other years, and amend his tax returns to report the income he earned from his UBS accounts. Stmt. of Facts ¶¶ 41, 44.

Bedrosian is a highly educated taxpayer who has been a corporate executive for decades. He deliberately decided to continue to violate the law regarding his foreign accounts after his accountant told him that his actions were illegal. When he finally filed an FBAR, he only reported his less valuable UBS account, keeping the high dollar account secret. He knew the Service would not be able to discover his UBS account ending in 6167, because he did not report the income he earned from his UBS accounts and paid for UBS to refrain from sending any documentation to the United States. It was only when UBS warned him that his account information would be disclosed to the Service that Bedrosian decided to amend his tax returns and FBARs. Bedrosian willfully violated the reporting requirements of section 5314 when he failed to report his UBS account ending in 6167 on his 2007 FBAR.

---

[5] The Service announced an offshore voluntary disclosure program in March 2009 through which taxpayers could disclose their foreign accounts, pay taxes on their previously unreported foreign income, possibly avoid criminal prosecution, and limit their liability for penalties. www.irs.gov/uac/voluntary-disclosure-questions-and-answers, Q3. Taxpayers were required to apply for acceptance into the program by October 15, 2009. www.irs.gov/uac/2009-offshore-voluntary-disclosure-program. One requirement that had to be met for a taxpayer to be accepted into the program was that the taxpayer must have submitted an application before the Service received information from another source regarding the taxpayer's foreign accounts. www.irs.gov/uac/voluntary-disclosure-questions-and-answers, Q52.

### 2. Bedrosian Recklessly Disregarded the FBAR Filing Requirements

As discussed above, in civil cases reckless disregard for the legal consequences of his acts is sufficient to show that a person willfully violated a statutory duty. A person acts with reckless disregard when violating a statute if he knows of an unjustifiably high risk of harm or the risk is so obvious that he should have known and he commits a violation anyway. *Safeco Ins. Co. of America v. Burr*, 551 U.S. at 68-69; *United States v. McBride*, 908 F.Supp.2d at 1205 (conduct qualifies as willful when evidencing reckless disregard of a known or obvious risk). Reckless disregard can also be inferred when a person is aware of a high probability that he has a tax liability but purposefully avoids learning facts that would confirm the liability. *United States v. Williams*, 489 Fed. Appx. 655, 658 (4th Cir. 2012); *United States v. McBride*, 908 F.Supp.2d at 1205 (stating that a person acts willfully when he consciously avoids learning of reporting requirements).

On a Schedule B, taxpayers must declare whether they have an interest in a foreign bank account or signature authority over such an account. *See* Gov. Ex. N, Schedule B. The form then explicitly directs taxpayers to review the instructions and exceptions for filing Form TD F 90-22.1, also known as an FBAR. *Id.* A taxpayer who has a foreign bank account can be reasonably expected to read the information included in his tax return, including the reference to the FBAR on Schedule B. *United States v. Sturman*, 951 F.2d 1466, 1477 (6th Cir. 1991) (finding that the defendant could have learned of the requirement to file an FBAR quite easily). The reference to the instructions for the FBAR puts a taxpayer on inquiry notice of the FBAR filing requirement. *United States v. Williams*, 489 Fed. Appx. at 659. Failure to read Schedule B qualifies as a conscious effort to avoid learning of the FBAR requirements. *Id.*

At a minimum, Bedrosian recklessly disregarded the reporting requirements of section 5314. Bedrosian is charged with knowledge of his tax return, including the directions on Schedule B for a taxpayer who has foreign bank accounts to determine whether they are required to file an FBAR. Bedrosian, therefore, was put on notice of the FBAR requirement long before he checked the box indicating that he had foreign accounts.

Bedrosian should have known that there was a significant risk that he was violating the law. He knew that he was reporting income from his domestic accounts but not his foreign accounts even though he understood that there was no difference between his domestic and foreign investment income. Stmt. of Facts ¶¶ 35, 36, 46. He paid UBS not to send any documents regarding his accounts to the United States, even though it concerned him not to receive reports with respect to his accounts' performance. Stmt. of Facts ¶¶ 16, 17. While continuing to break the law by concealing his foreign accounts from the Service, Bedrosian purportedly relied on an accountant whose advice he had questioned because the accountant suffered a series of strokes. Stmt. of Facts ¶ 30. Despite his faltering confidence in his accountant, Bedrosian did not seek a second opinion from another tax professional. Stmt. of Facts ¶ 30. Regardless, Bedrosian had the means and ability to do his own tax research and to find the FBAR form, fill it out, and file it without help from an accountant. Stmt. of Facts ¶¶ 2-10, 48, 49. Bedrosian therefore acted with reckless disregard when he failed to report his UBS account ending in 6167 on his 2007 FBAR.

VI. The Amount of the FBAR Penalty Assessment was Proper

1. Bedrosian Did Not Qualify for a Reduced Penalty

Section 5321 imposes a ceiling for the penalty for failing to comply with the reporting requirements, but otherwise leaves the amount of the penalty to the Service's discretion. 31

13

U.S.C. § 5321(a)(5). The Internal Revenue Manual contains informal guidance for examiners in determining the amount of the penalty. *See* I.R.M. 4.26.16.4.6.1, 2008 WL 5900937 (July 1, 2008); I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008). The guidance, however, is not binding. *Keller v. Commissioner*, 568 F.3d 710, 720-721 (9th Cir. 2009).

The Internal Revenue Manual provides a two-step process for examiners to determine if a penalty lower than the statutory maximum could apply. *See* I.R.M. 4.26.16.4.6.1, 2008 WL 5900937 (July 1, 2008) (providing that a lower penalty <u>might</u> apply depending on the taxpayer's ability to meet threshold requirements <u>and</u> the balance of the foreign bank accounts) (emphasis added); I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008). The first step involves applying four threshold conditions. *Id.*[6] If those conditions are met, a tiered analysis is applied to determine the amount of the penalty, based on the account balance. *Id*. If a taxpayer meets all of the threshold conditions, the maximum penalty still applies where the taxpayer's foreign account had a sufficiently high balance, over $1 million. I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008).

After applying the mitigation guidelines to this case, the maximum penalty would still be applicable for Bedrosian's failure to report his UBS account ending in 6167. During 2007, Bedrosian's account contained over $1 million. Gov. Ex. C; Stmt. of Facts ¶ 39. Therefore, he did not qualify for a reduced penalty under the Service's mitigation guidelines. I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008) (providing that if the maximum account balance

---

[6] The threshold conditions are as follows: 1) the taxpayer has no history of FBAR penalty assessments or criminal tax or BSA convictions; 2) the funds in the accounts were not from an illegal source or used to fund a criminal purpose; 3) the taxpayer cooperated during the examination; and 4) the Service did not assess a civil fraud penalty against the taxpayer with respect to the income attributable to a foreign account. I.R.M. 4.26.16.4.6.1, 2008 WL 5900937 (July 1, 2008). The United States does not dispute that Bedrosian met the four threshold conditions.

exceeded $1 million at any time during the year, the statutory maximum penalty applies). The maximum penalty for willful violations of the reporting requirements is the greater of $100,000 or 50% of the bank account balance at the time of the violation. 31 U.S.C. 5321(a)(5)(D). Because fifty percent of the balance of Bedrosian's account ending in 6167 was over $100,000, the Service assessed a penalty in the amount of $975,789.17. Stmt. of Facts ¶¶ 50, 51. Thus, the amount of the penalty assessed against Bedrosian was proper under section 5321.

2. Bedrosian Owes Interest and a Late-Payment Penalty for his Failure to Pay the FBAR Penalty

Title 31 of the United States Code provides for the accrual of interest on debts owed to the United States. 31 U.S.C. § 3717(a)(1). Interest begins to accrue from the date that notice of the amount due is first mailed to the person who owes the debt. 31 U.S.C. § 3717(a)(2)(b). In addition, a late-payment penalty must be assessed for the part of the debt that remains unpaid after 90 days. 31 U.S.C. § 3717(e)(2). The late-payment penalty is capped at six percent per year. *Id*.

The Service mailed notice of the amount due to Bedrosian on January 30, 2015. Stmt. of Facts ¶ 52. Under section 3717, interest begins to accrue on that date. 31 U.S.C. § 3717(a)(2)(b). From January 30, 2015 to September 10, 2015, interest accrued in the amount of $5,902. Gov. Ex. D. Interest continues to accrue until the penalty is paid in full.

Section 3717 also provides that a penalty applies to the portion of a debt that has not been paid after 90 days. Bedrosian made one payment in the approximate amount of $9,500, which is reflected in the statement of the amount due. *See* Gov. Ex. D. The late-payment penalty applies until Bedrosian fully pays the FBAR penalty assessed against him. As of September 10, 2015, the amount of the penalty was $35,412. Gov. Ex. D. Taking into account interest, the late-payment penalty, and the FBAR penalty, Bedrosian is indebted to the United States in the total

amount of $1,007,345.48 as of September 10, 2015, plus statutory additions accruing after that date. Stmt. of Facts ¶ 53. As stated above, the United States is entitled to a judgment against Bedrosian in that amount, plus interest and the late payment penalty until the judgment is satisfied.

## Conclusion

For the foregoing reasons, the United States' motion for summary judgment should be granted.

Date: November 30, 2016

                                        Respectfully submitted,

                                        ZANE DAVID MEMEGER
                                        United States Attorney

                                        CAROLINE D. CIRAOLO
                                        Principal Deputy Assistant Attorney General

                                        /s/ *Katherine M. Reinhart*
                                        KATHERINE M. REINHART
                                        KAVITHA BONDADA
                                        Trial Attorneys, Tax Division
                                        U.S. Department of Justice
                                        P.O. Box 227
                                        Washington, D.C.  20044
                                        202-307-6528/6536 (v)
                                        202-514-6866 (f)
                                        Katherine.Reinhart@usdoj.gov
                                        Kavitha.Bondada@usdoj.gov