IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR BEDROSIAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Case No. 2:15-cv-05853 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff Arthur Bedrosian hereby opposes the motion for summary judgment filed by

defendant, The United States of America.

**I.      This Court Should Apply The Definition of Willful Articulated in the Internal
        Revenue Manual and Elsewhere.**

The defendant asks this Court to adopt a definition of willfulness that is not supported by

its own operating manual, intended to provide guidance to examiners and to ensure uniformity in

examinations.  To understand the definition of willfulness in the FBAR context, this Court

should look to the Internal Revenue Manual ("IRM") and, specifically, the section entitled

"Willful FBAR Violations – **Defining Willfulness**" (emphasis added).  According to the IRM,

"[t]he test for willfulness is whether there was a voluntary, intentional violation of a known legal

duty."  IRM 4.26.16.6.5.1 (11-06-2015); *see also Cheek v. United States*, 498 U.S. 192, 201

(holding that the complexity of tax laws prompted the Court to carve out an exception to the

traditional rule that ignorance of the law or a mistake is no defense to prosecution; the

"exception" is that willfully should mean a knowing violation); *Ratzlaf v. United States*, 510 U.S.

135 (1994) (in order to convict a defendant under a statute that made it illegal to "willfully"

structure transactions to avoid reporting requirements, a jury had to find that the defendant *knew* that the structuring was unlawful).

The defendant argues that "[b]ecause section 5321 involves civil penalties, the relevant definition of willfulness is the definition applied in other civil contexts, including tax collection and compliance with reporting requirements." Def. Memo of Law, Doc. No. 22-1, p. 6 (internal citations omitted). But there can be no argument that the IRM definition of willfulness is applicable in the civil context. Furthermore, the Office of Chief Counsel for the Internal Revenue Service has issued a memorandum regarding "the proper interpretation of the willful standard" *See* C.C.A. 2006-03-026 (Jan. 20, 2006), attached hereto as Exhibit A. The memorandum states:

> With respect to the issue of 'willfulness' (identified as Issue 1 in the November 23 memorandum) there are two questions. The first question is whether the phrase 'willful violation (or willfully causes any violation)' has the same definition and interpretation under 31 U.S.C. § 5321 (the civil penalty) and § 5322 (the criminal penalty). **The answer is yes.**

C.C.A. 2006-03-026 (Jan. 20, 2006) (emphasis added), Exhibit A. The CCA Memorandum goes on to say that "[t]he same word, willful, is used in both of these sections. Statutory construction rules would suggest that the same word used in related sections should be consistently construed." *Id.*, p. 2; *see also Clark v. Martinez*, 543 U.S. 371, 378 (2005) (holding that "to give these same words [in 8 U.S.C. § 1231(a)(6)] a different meaning for each category would be to invent a statute rather than interpret one"). The same Chief Counsel memo states "[w]e expect that a court will find the burden in civil FBAR cases to be that of providing 'clear and convincing evidence [of willfulness],' rather than merely a preponderance of the evidence.'" "Clear and convincing" is the burden in civil tax fraud cases which, like FBAR cases, involve proof of intent and fraud-like allegations. *See Valetti v. Commission of Internal Revenue*, 260

F.2d 185, 188 (3d Cir. 1958). In fact, in assessing what type of evidence would help to establish a willful FBAR violation, the IRM identifies "[a]ny documents that would support fraud." IRM 4.26.16.6.5.2. The "circumstantial evidence" referenced in defendant's memorandum (p. 8) – which plaintiff disputes – is insufficient to support a finding on a fraud-like allegation.

While the Office of Chief Counsel memorandum is admittedly not precedential, it is certainly informative and persuasive evidence – combined with IRM 4.26.16.6.5.1 – of how the IRS intended for "willfully" to be interpreted. The defendant should not be permitted to articulate one standard internally but then advocate a different, and significantly less stringent burden for itself in litigation.

The defendant relies on an interpretation of willfulness articulated in *U.S. v. McBride*, 908 F.Supp.2d 1186 (D. Utah. 2012), which essentially held that any taxpayer who files a signed tax return while maintaining a foreign account that should be reported, but failed to file an FBAR, has committed a willful violation, regardless of the circumstances. Not only is this inconsistent with the IRS documents cited above and the Supreme Court decisions in *Cheek* and *Ratzlaf*, but it is significant that *McBride* was interpreting the pre-2004 version of 31 U.S.C. § 5321(a)(5), where a civil penalty could only be assessed for willful violations. In contrast, the current iteration of the statute provides separate penalties for willful and non-willful violations. However, under the standard for willfulness enunciated in *McBride*, it is difficult to conceive of *any* set of facts that would give rise to a non-willful violation. Such a construction would render the non-willful portion of the statute meaningless, and statutes should be construed in such a way as to give meaning to all provisions. *See Klein v. Republic Steel Corp.*, 435 F.2d 762 (3d Cir. 1970) ("all words and provisions of statutes are intended to have meaning and are to be given effect, and words of a statute are not to be construed as surplusage."). The definition of

willfulness advocated by the defendant here would render the non-willful penalty provision in 31 U.S.C. § 5321(a)(5) surplusage.

Finally, the Third Circuit's analysis of "willful" in other contexts, such as the FLSA, is instructive here. In *Brock v. Richland Shoe Co.*, 799 F.2d 80, 82 (3d Cir. 1986), that court said

> Although the meaning of willful is not fixed and determinate, it is clear that willfulness is akin to intentionality. A willful act requires a deliberate effort, more than mere negligence. Webster's *New Collegiate Dictionary* 1331 (1979) defines 'willful' to mean 'done deliberately: intentional." The 'words of statutes .... should be interpreted where possible in their ordinary, everyday senses.'

There is no reason to depart from this Third Circuit precedent defining willfulness.

## II. Even Applying a Broader Definition of Willfulness, Plaintiff's Case is Distinguishable From Those Finding a Willful Violation.

The facts of this case differ significantly from other cases finding a willful violation of the FBAR requirements. Even applying the overly broad definition of willful enunciated in those decisions, plaintiff's case is readily distinguishable.

In *U.S. v. Williams*, 489 F.App'x 655 (4th Cir. 2012), the defendant opened two Swiss bank accounts in the name of a British corporation. 489 F.App'x at 656. Over a seven year period, he deposited $7 million into the accounts but did not report them. *Id.* The Swiss government became aware of the accounts in 2000 and shortly thereafter the defendant and counsel met with Swiss authorities to discuss the accounts. *Id.* The day after that meeting, at the request of the United States government, the Swiss authorities froze the accounts. *Id.*

In January 2001 – just two months after his meeting with the Swiss authorities and freezing of his accounts – the defendant completed a "tax organizer" that he received from his accountant to aid in preparation of his 2000 tax return. One of the questions in the tax organizer was whether defendant "had an interest in or a signature or other authority over a bank account, or other financial account in a foreign country," and the defendant answered "no." *Id.* He also

4

checked "no" in response to Question 7a on Schedule B of his 2000 tax return, which asked "[a]t any time during 2000, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account?" *Id.* at 657. Defendant finally disclosed the accounts to the IRS in 2002 and also pled guilty to criminal charges of tax fraud and evasion in 2003. *Id.* He allocuted to all of the essential elements of the crimes with which he had been charged, including that he willfully evaded taxes by filing false and fraudulent returns where he failed to disclose the Swiss accounts. *Id.* Even after that, it was still another four years – 2007 – when the defendant finally filed an FBAR for 1993-2000. *Id.* at 657-58.

In *U.S. v. McBride*, 908 F.Supp.2d 1186 (D. Utah 2012), the defendant contacted a financial management firm to help reduce his tax liabilities. After listening to the firm's proposal, he responded "this is tax evasion" but still decided to proceed with the plan. 908 F.Supp. 2d at 1190. The firm set up a system where excess funds were passed to accounts for foreign corporations set up by the financial management firm that were nominally registered to the firm but controlled by the defendant. *Id.* at 1193-94. The defendant failed to file FBARs for 2000 or 2001 and, in response to question 7a regarding an interest in a financial account in a foreign country, the defendant answered "no" for both 2000 and 2001. *Id.* at 1198. After the IRS began investigating his activities, the defendant denied that he had participated in the program set up by the financial management firm, lied to the IRS, and initially failed to produce requested emails, letters, or handwritten notes that had been requested by the IRS. *Id.* at 1199.

Finally, in a very recent decision issued after the defendant filed its motion for summary judgment, the U.S. District Court for the Central District of California found that August and Maria Bohanec had willfully failed to report their interest in foreign bank accounts during 2007.

*U.S. v. Bohanec*, Case No. 2:15-cv-4347, Doc. No. 38 (C.D. Cal. Decemebr 8, 2016). In 2007, the

defendants maintained accounts in Switzerland, Austria, and Mexico. (Doc. No. 38, ¶¶ 49-50).

From the time they filed their 1998 federal income tax return until May 2011, the defendants did

not file any federal income tax returns. (Doc. No. 38, ¶ 57). In May 2011, after being accepted

into the Voluntary Disclosure Program, the defendants filed FBARs for 2003 – 2008 for the Swiss

account, but did not include the Austrian account that existed from 2003 – 2008 or the Mexican

account that existed from 2006 – 2008. (Doc. No. 38, ¶¶ 64-65).

   This case stands in contrast to *McBride, Williams*, and *Bohanec*. Here:

- Plaintiff answered question 7a of Schedule B truthfully on his 2007 federal income tax return, disclosing his interest in a foreign bank account and identifying Switzerland as the country;

- Plaintiff filed a 2007 FBAR in 2008 – albeit incomplete due to an oversight;

- Prior to the government commencing an investigation, plaintiff had filed an amended FBAR for 2007 that disclosed both accounts;

- Prior to the government commencing an investigation, plaintiff had filed amended returns and paid all taxes due;

- Plaintiff overwhelmingly cooperated with the investigation by providing all requested documents and being honest, credible, and forthcoming in his interview.

*See* Plaintiff's Statement of Undisputed Material Facts (Doc. 25-1), ¶¶ 10-13, 17-19, 42. These

facts are inconsistent with a willful violation and compel a finding different than *McBride,*

*Williams*, and *Bohanec*.

In providing guidance to examiners, the IRM identifies documents "that may be helpful in establishing willfulness" and one of those documents is "[a] copy of the signed income tax return with Schedule B attached, showing whether or not the box pertaining to foreign accounts is checked or unchecked." IRM 4.26.16.5.2(3)(2). Plaintiff checked the box – and even filed an FBAR, albeit incomplete – both of which belie a finding of willfulness.

## III.  Plaintiff Did Not Act With Reckless Disregard When He Followed the Advice Of His Accountant as to How to Handle His Foreign Accounts.

Even assuming, *arguendo*, that willfulness can be shown by a mere reckless disregard, there is clearly a dispute of fact as to whether plaintiff acted with reckless disregard to his obligation to file an FBAR. In the early 1990's, plaintiff made his tax accountant aware of the existence of the UBS account. *See* Plaintiff's Statement of Undisputed Material Facts (Doc. 25-1), ¶ 6. Handelan advised plaintiff that he would have to report the UBS account on his US income tax return when the account was closed. At that time, plaintiff would be required to declare any gains in the account. *Id.*, ¶ 7. Handelman advised plaintiff to leave the account alone for the time and that any tax on funds in the account could be paid either when the funds were repatriated by his estate or when he died. *Id.*, ¶ 8.

Plaintiff subsequently learned that the advice he received from his long-time accountant was incorrect and, at that time, approached his attorney about how to proceed and the law firm engaged an account to prepare amended returns and to file the appropriate FBARs. *Id.*, ¶ 12. But plaintiff did not "recklessly disregard" his duty. He disclosed it to his accountant – a logical choice for advice on a tax issue – and then followed the advice from his accountant. Only later, after consulting yet professional, did plaintiff learn that the original advice was wrong. He then immediately took action to correct the mistake. These facts are inconsistent with a reckless disregard of an obligation.

## IV.     This Court Should Consider and Apply The Mitigation Factors.

The IRM provides mitigation guidelines for reducing the penalty that would otherwise be assessed against a taxpayer for violation of the FBAR requirements.  It is clear that the intent behind the guidelines is to differentiate those individuals who have no criminal tax history or prior FBAR violations, who don't sustain a fraud penalty, and who cooperate with the investigation from those who do not.  Here, plaintiff falls into the first category, and even the defendant has admitted that he satisfies all of the threshold conditions that may justify a lesser penalty. *See* Def. Memo of Law, Doc. No. 22-1, p. 14, n. 6.  The defendant argues, however, that the mitigation conditions should not apply because this was allegedly a willful violation with an account balance of more than $1 million. *See* Def. Memo of Law, Doc. NO. 22-1, p. 14.  But for all of the foregoing reasons, as well as those in Plaintiff's Motion for Summary Judgment, the defendant has failed to show that this was a willful violation or, at the very least, there are certainly disputed issues of fact as to whether or not it was willful.  Accordingly, the Court should still consider and apply the mitigation conditions.

## V.     Summary Judgment Should Be Denied.

Under Rule 56, the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  Any inferences "to be drawn from the evidence ... must be viewed in light most favorable to the party opposing the motion." *Todar v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989).  Here, viewing the evidence in the light most favorable to plaintiff, it is clear that there are genuine disputes as to multiple material facts. *See* Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶¶ 13-14, 16-18, 27-30, 32, 35-36, 38, 42, 46, 49, 53;

*see also* Plaintiff's Motion for Summary Judgment and Plaintiff's Statement of Undisputed Material Facts, Doc. No. 25; 25-1.

For all of the foregoing reasons, as well as those contained in plaintiff's Response to Defendant's Statement of Undisputed Material Facts, plaintiff respectfully requests that the Court deny defendant's motion for summary judgment in its entirety.

Respectfully submitted,

_/s/ Patrick J. Egan_
Patrick J. Egan, Esquire
Beth L. Weisser, Esquire
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
(215) 299-2000 (telephone)
(215) 299-2150 (fax)

*Attorneys for Plaintiff Arthur Bedrosian*

Date: December 19, 2016

## CERTIFICATE OF SERVICE

I, Beth L. Weisser, hereby certify that the foregoing Plaintiff's Response to Defendant's

Motion for Summary Judgment was served by ECF, upon the following:

Katherine M. Reinhart, Esquire
Kavitha Bondada, Esquire
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Katherine.Reinhart@usdoj.gov


/s/ Beth L. Weisser
Beth L. Weisser


Date: December 19, 2016

# EXHIBIT "A"

## Office of Chief Counsel
## Internal Revenue Service
# Memorandum

**Number: 200603026**

**Release Date: 1/20/2006**
CC:SB:SBerman
POSTS-109746-05

UILC:   9999.99-00  9999.99-01

date:   September 01, 2005

to:   K. Steven Burgess, Director, Examination, Small Business/Self Employed

Rodney Hare, Territory Manager, FTL1

from:   Sara, M. Coe, Assistant Division Counsel (ATAT), SB/SE Division Counsel CC:SB

subject:   Foreign Bank and Financial Accounts Report (FBAR) Penalty, November 23, 2004
Memorandum from Rodney Hare, Territory Manager, FTL1

This is in response to a request for guidance from you and Rodney Hare with respect to the
section 5321(a)(5) civil FBAR penalty for willful violations with respect to Offshore Credit Card
Program (OCCP) and Last Chance Compliance Initiative (LCCI) cases. I would be happy to
meet with you or others in SBSE to further discuss these issues.

The memorandum raises three issues, each with subordinate questions, and posits four scenarios
for which guidance is sought. The three issues concern (1) the proper interpretation of the
willful standard, (2) ███████████████████████████████████████████,
and (3) the situation of offshore credit card accounts that are not associated with bank accounts
for deposits. The four scenarios supply a set of facts and variations on the facts and ask whether
we believe the FBAR penalty should be asserted.

**Issue 1:**

With respect to the issue of "willfulness" (identified as Issue 1 in the November 23
memorandum) there are two questions. The first question is whether the phrase 'willful violation
(or willfully causes any violation)' has the same definition and interpretation under 31 U.S.C.
§ 5321 (the civil penalty) and § 5322 (the criminal penalty). The answer is yes.

Both section 5321(a)(5), providing for a civil penalty, and section 5322(a), providing for criminal penalties, contain a similar "willfulness" requirement.[1] Section 5321(a)(5) provides that "The Secretary of the Treasury may impose a civil money penalty on any person who willfully violates, or any person willfully causing any violation of, any provision of section 5314." Section 5322 provides that "[a] person willfully violating this subchapter [the Bank Secrecy Act]...or a regulation prescribed under this subchapter...shall be fined not more than $250,000, or imprisoned for not more than five years, or both." The same word, willful, is used in both of these sections. Statutory construction rules would suggest that the same word used in related sections should be consistently construed.

There are no cases in which the issue presented is construing "willful" in the civil penalty context. Ratzlaf v. United States, 510 U.S. 135 (1994), is a Supreme Court case that addressed the standard for willfulness in the context of a criminal violation of a structuring provision of the Bank Secrecy Act (BSA). The standard applied in Ratzlaf, at 141, was "a voluntary intentional violation of a known legal duty"; that is, the government had to prove that the defendant had acted with knowledge that his conduct was unlawful in order to establish he had willfully violated the anti-structuring law. It was not enough that he knew the bank had a duty to report the transactions. In his dissenting opinion, Justice Blackmun argued for a lower standard (one where the person has knowledge of the third party's reporting requirement but not specific knowledge of the illegality of his own actions). In footnote 5 to his dissent, however, Justice Blackmun noted that:

> [I]n the context of the other reporting provisions -- §§ 5313, 5314
> [establishing the FBAR reporting and record keeping requirements],
> and 5316 -- the entity that can 'willfully violate' each provision is also
> the entity charged with the reporting duty; as a result, a violation with
> "knowledge of the reporting requirements" necessarily entails the entity's
> knowledge of the illegality of its conduct (that is, its failure to file a
> required report). In contrast, § 5324 [the provision that was violated in
> Ratzlaf] prohibits a customer from purposefully evading a bank's reporting
> requirements, so knowledge of the reporting requirements does not collapse
> into actual knowledge that the customer's own conduct is prohibited.

Although Justice Blackmun's opinion is a dissent in a case in which the interpretation of "willful" in the context of a violation of section 5314 was not at issue, we agree with his conclusion that in the case of the FBAR penalty, in order for there to be a voluntary intentional violation of a known legal duty, the accountholder would just have to have knowledge that he had a duty to file an FBAR, since knowledge of the duty to file an FBAR would entail knowledge that it is illegal not to file the FBAR. A corollary of this principle is that there is no willfulness if the accountholder has no knowledge of the duty to file the FBAR.

---

1 This memorandum cites the section 5321 penalty as in effect prior to the American Jobs Creation Act of 2004 (AJCA). Although the AJCA reorganized section 5321 and added a separate penalty not requiring a showing of willfulness, it retained a penalty for willful violations, so the discussion here applies as well under the AJCA.

We agree that cases involving willful FBAR violations will generally have to rely on circumstantial evidence. Also, as noted in the memorandum, willfulness can be inferred where an entire course of conduct establishes the necessary intent. An example of where such an inference was made in the context of a criminal FBAR violation can be found in <u>United States v. Sturman</u>, 951 F.2d 1466, 1476 (6th Cir. 1991).

A second question in the November 23 memorandum, with respect to the willfulness issue, is whether the criteria for assertion of the civil FBAR penalty are the same as the burden of proof that the Service has when asserting the civil tax fraud penalty under IRC section 6663. Although there are no cases that address this issue with respect to the civil FBAR penalty, we expect the answer to be yes. This is because of the inherent difficulty of proving, or disproving, a state of mind (willfulness) at the time of a violation.

The burden of proof for criminal cases for establishing willfulness is to provide proof "beyond a reasonable doubt." Although the same definition for willfulness applies ("a voluntary intentional violation of a known legal duty"), the Service would have a lesser burden of proof to meet with respect to the civil FBAR penalty than the criminal penalty. We expect that a court will find the burden in civil FBAR cases to be that of providing "clear and convincing evidence," rather than merely a "preponderance of the evidence." The clear and convincing evidence standard is the same burden the Service must meet with respect to civil tax fraud cases where the Service also has to show the intent of the taxpayer at the time of the violation. Courts have traditionally applied the clear and convincing standard with respect to fraud cases in general, not just to tax fraud cases, because, just as it is difficult to show intent, it is also difficult to show a lack of intent. The higher standard of clear and convincing evidence offers some protection for an individual who may be wrongly accused of fraud.

The burden of proof the Service has with respect to civil tax fraud penalties represents an exception to the general presumption of correctness that the courts have afforded to tax assessments (where the taxpayer, who is in the best position to provide supporting documentation, would ordinarily have the burden to show that taxes and tax penalties assessed are incorrect). There is a presumption of correctness in tax cases because the courts recognize the importance of the government's ability to efficiently collect taxes, which are "the life-blood of government."[2] Because the FBAR penalty is not a tax or a tax penalty, the presumption of correctness with respect to tax assessments would not apply to an FBAR penalty assessment for a willful violation—another reason we believe that the Service will need to meet the higher standard of clear and convincing evidence.[3]

---

2 <u>Bull v. United States</u>, 295 U.S. 247, at 259 (1935).

3 In footnote 2 of <u>United States v. Dollar Bank Money Market Account</u>, 980 F.2d 233 (3rd Cir. 1992), dealing with a violation of the anti-structuring provisions of section 5324 of Title 31, the court stated that "[i]n a civil penalty or criminal case under 31 U.S.C. §§ 5321-5322 (1988), the government has the burden [of proof regarding mens rea]."

Please note that under section 7491(c), the Service bears the burden of production with respect to all penalties and additions to tax asserted under Title 26. The FBAR penalty is not asserted under that Title, so section 7491(c) will have no bearing here.

Clarification was requested with respect to how many of the documents identified in Exhibit A, attached to the November 23 memorandum, would be required as evidence to support a willful violation and if some of the elements are more important than others. Exhibit A is a listing of documents, such as copies of bank account statements and agreements, that may be used to support a determination that an FBAR violation is willful. A determination that there was a willful violation will likely need to be supported by some combination of the documents on the list and not all the documents listed may be available to the revenue agent. The answer as to which combination of documents will be adequate to support willfulness, and which elements are more important, will depend on the facts and circumstances of each case.

Finally, the memorandum suggested that the Service should recommend regulations be issued to redefine "willfulness" for purposes of asserting the civil FBAR penalty. Regulations may provide clarification with respect to the meaning of a statute but they can never be in derogation of a statute. There is no question that Congress intended the section 5321(a)(5) penalty to only be asserted in cases where there have been willful violations. The "willfulness" requirement cannot be changed by regulation.

**Issue 2:**

With respect to the second issue identified in the November 23 memorandum,



There are a couple of responses to this issue.

In other situations, in which taxpayers want to accept the LCCI offer, but feel that they should not be liable for the FBAR penalty, examiners have discretion not to impose the FBAR penalty. Under the LCCI, taxpayer/accountholders are in essentially the same position with the one-year FBAR penalty that they are in with the one-year civil fraud penalty. The LCCI letter says regarding the civil fraud penalty that "If your information shows that the civil fraud penalty…is warranted…we will impose the civil fraud penalty for *only* the major year." That is, imposition of the civil fraud penalty is not automatic. The FBAR language says, "Also, civil penalties for

POSTS-109746-05     5

violations involving [FBARs] will be imposed for *only* one year and we may resolve the FBAR penalty for less than the statutory amount based on the facts and circumstances of your case." The instructions to agents contained in the Guidelines for Mitigation of the FBAR Civil Penalty for LCCI Cases provide: "The examiner may determine that the facts and circumstances of a particular case may warrant that a penalty under these guidelines is not appropriate or that a lesser amount than the guidelines would otherwise provide is appropriate." If agents follow these guidelines we need not be imposing the FBAR penalty arbitrarily in cases in which it clearly does not apply.

The memorandum asks if it is possible to shift the burden of proof for willfulness to an uncooperative or unresponsive taxpayer. Unfortunately, no. There is no provision in Title 31 for shifting the burden of proof with respect to willfulness. Failure to cooperate, however, would be a factor supporting other circumstantial evidence in favor of imposing an FBAR penalty.

Finally, under Issue 2, advice was sought as to the amount of penalty that may be assessed in cases where the total amounts in a foreign account are not available. Where it is known that a violation occurred but it is unknown how much money was in the foreign account, section 5314 provides for the assessment of a penalty in an amount up to $25,000 for willful violations occurring before October 22, 2004 and up to $100,000 for violations occurring after October 21, 2004.

## Issue 3:

The memorandum raised a third question of whether either a "secured" offshore credit card account or a credit card account in which large advance payments were made, resulting in positive balances in the account, can be a financial account for FBAR reporting purposes.[4]

The definition for "financial accounts" is contained in the instructions for filing the FBAR report. The instructions make no reference to credit cards. The instructions state that a financial account:

> Generally includes any bank, securities, securities derivatives or other financial instruments accounts. Such accounts generally also encompass any accounts in which the assets are held in a commingled fund, and the account owner holds an equity interest in the fund [as would be the case with a mutual fund account]. The term also means any savings, demand, checking, deposit, time deposit, or any other account maintained with a financial institution or other person engaged in the business of a financial institution.

---

4 Exhibit B of the referenced memorandum includes a copy of a credit card application form from an offshore bank. The form represents that it is an application form for a "secured" credit card. Applicants must complete a trust agreement and provide a security deposit. The trust agreement states that the security deposit is held by the trust as collateral for the credit card and that the deposit will earn interest income for the credit card accountholder. The accountholder is generally entitled to the security deposit upon cancellation of the credit card account.

A secured credit card account can be secured by a separate deposit account including a deposit account with a trust as described in the credit card application form in Exhibit B.[5]  The credit limit for a secured credit card account would typically be tied to the balance in the deposit account that is securing the credit card account.  The deposit account would clearly be a "financial account" for FBAR purposes.

We also believe that a debit card account is a financial account.  If a card agreement requires that advance payments be made to cover anticipated charges, then the card is a debit card, not a credit card, and a debit card would be a financial account for FBAR purposes.

Whether the credit card account itself is a financial account for FBAR purposes is another question.  Generally, a credit card account would not be a financial account.[6]  Although the definition of financial account includes a reference to "any other account maintained with a financial institution," this language immediately follows a listing of traditional deposit accounts. Because it is unclear whether the above definition was intended to include credit card accounts, it would generally not be appropriate to assert the FBAR penalty for a willful failure to report a credit card account with a foreign bank.

If, however, by making advance payments, the card holder was using the credit card account as a debit card or a checking account, then an argument could be made, depending on the facts and circumstances of the particular case, that the credit card account was a financial account for purposes of the FBAR reporting and recordkeeping requirements.  Showing that a credit card account is a financial account, however, is only the first step in determining whether the FBAR penalty applies.  We would also need to be able to show that the accountholder willfully failed to report the account.

With respect to a deposit with a trust associated with the credit card account, although a card holder generally would not be required to file an FBAR with respect to the credit card account, the trust account (which in Exhibit B is held as collateral for the credit card and will earn interest for the card holder) does act as a deposit account and, therefore, can be considered a "financial account."  Further, for this type of credit card, the existence of the credit card account would be circumstantial evidence of the existence of the trust account, and the credit card statements would be helpful in estimating the minimum amount deposited in the trust account.

Also asked as part of Issue 3 was whether, in cases where it is determined that a credit card account was used as a deposit account and that the FBAR penalty for a willful violation was determined to be appropriate, the FBAR penalty can be based on the highest balance shown on

---

5 A credit card account can be secured by a deposit account or any other asset the credit card issuer is willing to accept as collateral.  For purposes of this discussion, however, it is assumed that the credit card is secured by a deposit account.

6 ███████████████████████████████████████

the credit card statements during the year. The answer is yes, subject to statutory limitations on the amount of the penalty. The decision to base the FBAR penalty on the highest balance in an account during the year was a policy decision made during the development of the FBAR mitigation guidelines. Section 5321(a)(5), however, limits the amount of the penalty to the lesser of $100,000 or the balance in the account at the time of the violation which, for failure to report accounts, is June 30 of the succeeding year.[7] If it is determined that an FBAR penalty is warranted, the overpayment balances on the monthly credit card statements could be used to compute the penalty amount, subject to the above statutory limitation.

The memorandum also included four fact scenarios involving offshore credit cards. In each of the scenarios, the memorandum asks if Counsel would concur in asserting the FBAR penalty. The scenarios, however, do not provide enough information to give a blanket opinion. For each of the four scenarios, the facts and circumstances of individual cases could result in different determinations. In each case, there are two determinations to be made: first, whether the account in question is a financial account for FBAR purposes,[8] and second, whether the failure to file an FBAR was willful (that is, whether the accountholder knew he had to file an FBAR). Below is an attempt to address each of the four scenarios you presented.

In Scenario 1, there are credit card statements demonstrating that the taxpayer made large payments to a credit card account in a foreign country for at least three months. While more supporting documentation would help to make a stronger case, looking at the whole picture, where the taxpayer did not file an income tax return in recent years, made large numbers of cash advances against the credit card, and made large advance payments to the credit card account in three months in one year that totaled multiple times the amount of the credit limit for the credit card, it appears that the card holder intended to use the credit card account as a debit card or other traditional deposit account. It follows that an argument could be made that, in this case, the credit card account is a financial account for FBAR purposes.

---

7 The AJCA increased the maximum civil FBAR penalty for a willful violation occurring after October 22, 2004, to the greater of $100,000 or 50% of the amount in the account at the time of the violation.
8 For each of the 4 scenarios the memorandum requested whether we would concur that a foreign credit card account was a financial account and asked whether the taxpayer's failure to file or responses to the foreign account question on Schedule B would change our opinion. Failure to file and the content of Schedule B generally have no bearing on whether an account is a financial account. These factors are pertinent to whether there was willfulness.



Even if the civil FBAR penalty could not be asserted against the accountholder in Scenario 1, it appears that significant civil tax penalties should apply. █████████████████████████████

For Scenario 2, where a deposit account with a foreign bank (an account, for which the taxpayer has signature authority, that is held in the name of an international business company, or IBC, that is solely owned by the taxpayer) and "secured" credit card accounts have been identified, the FBAR reporting and recordkeeping requirements would apply with respect to the deposit account because the taxpayer has signature authority over the account. ████████████████████████

Although the credit card accounts are described as "secured credit cards" it is not clear whether the cards are secured by the deposit account that has been identified or by another, unidentified deposit account. It is also not clear whether advance payments, resulting in positive balances, are being made to the credit card accounts. Whether the credit cards will be considered financial accounts for FBAR purposes will depend on the facts and circumstances of the case. Scenario 2 does not provide sufficient information to make such a determination.

As with Scenario 1, █████████████████████████████████████████████

In Scenario 3, the taxpayer owned several foreign "shell" corporations. A separate foreign bank account and a separate credit card account was held in the name of each corporation. Each of the bank accounts would clearly be a financial account for FBAR purposes. If willfulness is established, the taxpayer could be liable for the FBAR penalty with respect to the bank accounts. There is not enough information to demonstrate that the credit card accounts were used as deposit accounts, however, so a determination cannot be made that the credit card accounts are financial accounts for FBAR purposes.

In Scenario 4, the taxpayer lives in a foreign country, has a foreign investment account, and agrees to the LCCI settlement except for the FBAR penalty. It will be necessary to consider

We disagree with the statement in the November 23 memorandum in Scenario 4 that the taxpayer must agree to the FBAR penalty for one year in order to participate in the LCCI program. Under both the LCCI program and the mitigation guidelines for FBAR penalties, the examiner has discretion to not assert the FBAR penalty if the examiner determines the penalty is not warranted based on the facts and circumstances of the case. Scenario 4 is a good example of a case where a taxpayer will not agree to tax adjustments and penalties because of an objection to an FBAR penalty which may not be warranted given the facts of the case.

In the four scenarios in the November 23 memorandum, there appears to be a concern that the civil FBAR penalty must be asserted in every situation identified. The penalty statute, however, provides for discretion in asserting the penalty. The purpose for the penalty, and the reason for the flexibility Congress provided in asserting the penalty, is to encourage compliance. There is no requirement to assert a separate FBAR penalty for every possible technical violation encountered and doing so could lead, in some cases, to an absurd result. To put this in perspective, consider that the section 6663 civil fraud penalty is limited to 75% of the underpayment of tax attributable to fraud

This writing may contain privileged information. Any unauthorized disclosure of this writing may undermine our ability to protect the privileged information. If disclosure is determined to be necessary, please call me.

Please call me if you would like to discuss this memorandum further or if you have any other questions concerning the civil FBAR penalty.

Cc: Tom Ludwig, Sandra Stolt, Kevin McCarthy, Elizabeth Witzgall, Tom Hull

## CERTIFICATE OF SERVICE

I, Beth L. Weisser, hereby certify that the foregoing Plaintiff's Response to Defendant's

Motion for Summary Judgment was served by ECF and electronic mail, upon the following:

Katherine M. Reinhart, Esquire
Kavitha Bondada, Esquire
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Katherine.Reinhart@usdoj.gov

/s/ Beth L. Weisser
Beth L. Weisser

Date: December 19, 2016