IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

ARTHUR BEDROSIAN, )
)  Case No. 2:15-cv-05853
Plaintiff, )
)
v. )
)
UNITED STATES OF AMERICA, et al., )
)
Defendants. )
_____)

## UNITED STATES' REPLY TO THE PLAINTIFF'S RESPONSE TO ITS MOTION FOR SUMMARY JUDGMENT

The plaintiff, Arthur Bedrosian, does not dispute that he was subject to the reporting

requirements in 31 U.S.C. § 5314, that he failed to report one of his two foreign bank accounts in

violation of section 5314, and that the calculation of the penalty assessed against him, as well as

the current amount due, was proper.[1]  The only remaining issue is whether Bedrosian willfully

violated section 5314.  Bedrosian denied some of the facts asserted by the United States without

actually refuting the facts.  He argued that reckless disregard is not part of the definition of

willfulness in civil cases and that a heightened standard of proof applies, despite Supreme Court

precedent to the contrary.  Bedrosian also continued to misconstrue the mitigation guidelines in

the Internal Revenue Manual.  None of Bedrosian's arguments refute the United States' showing

that he willfully failed to report his UBS account.  Therefore, the United States' motion for

summary judgment should be granted.

---

[1] Bedrosian contested whether the penalty for willful violations of section 5314 should have been assessed against him.  That is a different issue from pure computation of the penalty.  He admitted the facts with respect to computation, solely refuting imposition of the penalty as a whole.  *See* Docket Nos. 22-3 and 26-1, ¶¶ 51, 53.

**Argument**

I.      <u>There are no Genuine Disputes of Material Fact that would Preclude the Entry of Summary Judgment in Favor of the United States</u>

Bedrosian denied various facts asserted by the United States, but none of his denials establish genuine disputes of material fact that would preclude granting summary judgment in the United States' favor. Bedrosian's denials can be grouped into the following three categories: attempts to qualify the facts to make them less unfavorable; attempts to add additional facts not supported by the record; and attempts to add additional, extraneous facts.[2]

Bedrosian argued that it was not his idea to change his UBS savings accounts to investment accounts to generate a profit, that he thought of his UBS accounts as one account, that it was not his idea for UBS to refrain from sending mail to him in the United States, that he may not have met with his UBS banker annually, and that he is not *that* capable of conducting his own research. *See* Docket Nos. 22-3 and 26-1, ¶¶ 13, 14, 17, 18, 49. His qualifications do not change the facts. He changed his UBS accounts from savings accounts to investment accounts, he owned two UBS accounts, he paid UBS to refrain from sending him any documents, he met with his UBS banker to review his accounts' performance, and he conducted his own tax research. *Id*. Thus, his qualifications are distinctions without a difference and do not constitute genuine disputes of material fact.

---

[2] The two exceptions are Bedrosian's denials to paragraphs 30 and 35 with respect to the statements that he never sought a second opinion regarding Handleman's advice and that he did not report the income from his UBS accounts on his 2007 tax return. Docket Nos. 22-3 and 26-1, ¶¶ 30, 35. The United States admits that Bedrosian eventually hired professionals to resolve his non-compliance, but he waited over a decade after his conversation with Handleman to seek another opinion. Additionally, the United States admits that Bedrosian amended his 2007 income tax return and reported his foreign investment income, but he did not report that income on his original 2007 return.

Bedrosian attempted to add additional facts that were not supported by his citations to the record. He listed additional reasons for not requesting account statements from UBS, but none of those reasons were supported by the citation to his deposition testimony, except his assertion that he was too busy to deal with his investment accounts. Docket Nos. 22-3 and 26-1, ¶ 16. Bedrosian also asserted that his prior accountant, Seymour Handleman, told him that he did not need to report the existence of his UBS accounts until the accounts were closed, at which time he would have to pay taxes on the income he earned from the accounts. Docket Nos. 22-3 and 26-1, ¶ 28. His citation to the record does not support the statement that Handleman told him to continue to break the law by not reporting the existence of his UBS accounts as opposed to reporting the income he earned from those accounts. *Id.* Finally, Bedrosian added additional statements regarding why he did not discuss Handleman's advice with his new accountant, Sheldon Bransky, and the depth of his tax research. Docket Nos. 22-3 and 26-1, ¶¶ 32, 49. Neither of his statements are supported by the record. *Id.* None of the unsupported information should be considered for purposes of summary judgment.

Bedrosian attempted to add extraneous information that does not change the underlying facts. In response to the fact that Handleman told him that he had been breaking the law for 20 years by not reporting his foreign accounts, Bedrosian stated that he did not know prior to the conversation with Handleman that he was required to report those accounts. Docket Nos. 22-3 and 26-1, ¶ 27. That does not change the fact that Handleman told him in the early 1990s that failing to report his foreign accounts was illegal. Similarly, Bedrosian's assertion that he amended his tax returns and FBARs before the Internal Revenue Service began an audit does not change the fact that he failed to comply with the reporting requirements for 2007. *See* Docket Nos. 22-3 and 26-1, ¶¶ 35, 38, 42, 46.

None of Bedrosian's assertions with respect to the facts in the record refute the United States' showing that he willfully failed to report his UBS account. Bedrosian knew long before the year at issue that failing to report foreign accounts was illegal. Therefore, when he filed an FBAR for 2007 that did not report both of his UBS accounts, he knowingly failed to comply with the reporting requirements. The fact that he eventually reported both of his accounts and a few years of income earned from those accounts does not negate his willfulness. Bedrosian only attempted to come into compliance after being warned by UBS that his account information would be turned over to the Internal Revenue Service. Docket No. 22-1, pg. 11. That he came forward after knowing he had been caught does not show that his earlier non-compliance was inadvertent. Therefore, Bedrosian willfully failed to report his UBS account.

II.     The Definition of Willfulness in Civil Cases Includes Knowing Violations and Reckless Disregard for the Law

Bedrosian argued that the term "willfully" in section 5321 is limited to knowing violations of the law, because that is the definition in criminal cases, a Third Circuit case not involving the FBAR penalty, and non-binding Internal Revenue Service documents.[3] Docket No. 26, pgs. 1-4. He also argued that the definition of willfulness in *McBride* cannot be applied here, because *McBride* involved an FBAR penalty asserted before section 5321 was amended in 2004. *Id.*; *see United States v. McBride*, 908 F.Supp.2d 1186 (D. Utah 2012). Bedrosian's

---

[3] As explained in the United States' response to Bedrosian's summary judgment motion, the cases applying the definition of willfulness to determine criminal liability are inapplicable in this civil case. Docket No. 27, pgs. 1-2; *see also Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (finding that the willfulness standard in a criminal case did not apply because the "concern that an individual taxpayer unfamiliar with the nuances of the tax code might confront a felony conviction" is not present in a case solely involving civil penalties).

arguments are insufficient to show that reckless disregard is not part of the definition of

willfulness in civil cases, including cases involving the FBAR penalty.

Bedrosian argued that the definition of willfulness as stated by the United States was

inconsistent with the Third Circuit case *Brock v. Richland Shoe Co*. Docket No. 26, pg. 4; *see*

*Brock v. Richland Shoe Co.*, 799 F.2d 80 (3d Cir. 1986). A closer reading of *Richland Shoe*

reveals that the Third Circuit found willfulness included knowing violations of the law as well as

reckless disregard for whether conduct violated the law. *Brock v. Richland Shoe Co.*, 799 F.2d at

81. That holding was upheld by the Supreme Court and was cited in *Safeco* in the Court's

finding that willfulness in the civil context includes knowing and reckless violations.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Safeco Ins. Co. of America v. Burr*, 551

U.S. 47, 57 (2007). The United States cited *Safeco* as setting forth the definition of willfulness

in civil cases, which includes the instant case. Docket No. 22-1, pg. 6. Thus, the definition of

willfulness as explained by the United States is consistent with both Third Circuit and Supreme

Court precedent.

The Internal Revenue Service documents cited by Bedrosian do not supersede the binding

precedent mentioned above. Bedrosian cited a Chief Counsel advice memorandum from 2006 in

which agency attorneys were predicting what might happen in future FBAR litigation. Docket

No. 26, pgs. 1-2. That prediction is not binding and did not come to fruition. Regardless, the

memorandum was issued before, and is contrary to, the decision in *Safeco*. *See Id*.; *Safeco Ins.*

*Co. of America v. Burr*, 551 U.S. 47, 57 (2007); *see also Christensen v. Harris County*, 529 U.S.

576, 587 (2000) ("Interpretations such as those in opinion letters – like interpretations contained

in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of

law – do not warrant *Chevron*-style deference"); 26 U.S.C. § 6110(b)(1)(A), (k)(3); *United*

*States v. Bohanec*, No. 2:15-cv-4347, 2016 WL 7167860 (C.D. Cal. Dec. 8, 2016).  Similarly, the

guidance in the Internal Revenue Manual is not binding on this Court.  *Christensen v. Harris*

*County*, 529 U.S. at 587; *Keller v. Commissioner*, 568 F.3d 710, 720-721 (9th Cir. 2009).

Finally, Bedrosian argued that *United States v. McBride* does not apply to this case

because he interprets *McBride* to hold that any taxpayer who has a foreign account and signs a

tax return but does not file an FBAR willfully violated section 5314.  Docket No. 26, pg. 3.[4]

Bedrosian's interpretation oversimplifies the holding in *McBride*.  The court held that a taxpayer

is charged with knowledge of the contents of his tax return, including the instruction for

taxpayers who own foreign accounts to check the rules for filing FBARs.  *United States v.*

*McBride*, 908 F.Supp.2d at 1206-1209.  This precludes a taxpayer from escaping liability by

claiming he did not read what he signed.  *Id.*  Bedrosian claimed that he was unable to imagine a

situation in which a violation of section 5314 would not be willful, but that is not the issue before

this Court.  The only remaining issue in this case is whether Bedrosian's failure to report his

UBS account was willful.  Bedrosian's argument with respect to *McBride* has no affect on

resolving that issue.

III.      The Correct Standard of Proof is Preponderance of the Evidence

Bedrosian argued that the applicable standard of proof is clear and convincing evidence

instead of preponderance of the evidence.  Docket No. 26, pgs. 2-3.  He based his argument on a

vague reference to civil fraud cases, even though the current case is not a fraud case.  *Id.*

---

[4]  Bedrosian also argued that *McBride* does not apply to this case, because it involved a willful violation of an earlier
version of section 5321.  Docket No. 26, pgs. 3-4.  When Congress amended section 5321 in 2004, the only change
with respect to the willful penalty was to increase the maximum penalty.  *Compare* 31 U.S.C. § 5321(a)(5)(2001)
and 31 U.S.C. § 5321(a)(5) (2004).  Increasing the dollar amount of the penalty does not affect the analysis of
whether a violation was willful.  It is irrelevant that Congress also added a smaller penalty for non-willful violations.
Both *McBride* and the case currently before this Court involve penalties for willful violations.

Although Congress did not prescribe the standard of proof for FBAR cases, the "preponderance-of-the-evidence standard generally applicable in civil actions" is the correct standard for FBAR cases. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991) (finding that when a statute does not prescribe the standard of proof, Congress' silence is inconsistent with a view that a heightened standard was intended). The heightened standard of clear and convincing evidence only applies in civil cases involving "'particularly important individual interests or rights.'" *United States v. Bohanec*, No. 2:15-cv-4347, 2016 WL 7167860 (C.D. Cal. Dec. 8, 2016), *quoting*, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983). Those interests include parental rights, involuntary commitment, and deportation, but do not include the imposition of civil sanctions not involving those interests, even if such sanctions are severe. *Id*.

The Supreme Court noted that "the difficulty of proving the defendant's state of mind supports a lower standard of proof." *Herman & MacLean v. Huddleston*, 459 U.S. at 390, n. 30. As in *Bohanec*, the FBAR penalty at issue in this case does not rise to the level of a particularly important individual interest or right that would justify a higher standard of proof. *United States v. Bohanec*, No. 2:15-cv-4347, 2016 WL 7167860 (C.D. Cal. Dec. 8, 2016). Applying the preponderance of the evidence standard in this case would be consistent with Supreme Court precedent and other FBAR cases. *See Herman & MacLean v. Huddleston*, 459 U.S. at 389-390; *United States v. Bohanec*, No. 2:15-cv-4347, 2016 WL 7167860 (C.D. Cal. Dec. 8, 2016); *United States v. McBride*, 908 F.Supp.2d at 1201-1202.

IV.     Bedrosian Misconstrued the Mitigation Guidelines

Bedrosian continued his misinterpretation of the two-step mitigation guidelines contained in the Internal Revenue Manual.  Docket No. 26, pg. 8.  As the United States previously explained, the non-binding guidelines are dependent on **both** the four threshold conditions **and** the balance of the foreign account.  Docket No. 22-1, pgs. 13-15; Docket No. 27, pg. 6.  Bedrosian misconstrued the United States' argument by stating that the United States asserted that the mitigation guidelines as a whole do not apply because his bank account balance was over $1 million.  Docket No. 26, pg. 8.  Instead, the United States asserted that applying the mitigation guidelines would not result in a reduced penalty for Bedrosian.  Docket No. 22-1, pgs. 13-15; Docket No. 27, pg. 6; *see also* I.R.M. 4.26.16.4.6.1, 2008 WL 5900937 (July 1, 2008); I.R.M. 4.26.16.4.6.3, 2008 WL 5900939 (July 1, 2008).  Bedrosian cannot demonstrate that he is entitled to a reduced penalty under the mitigation guidelines by only applying the half of the guidelines that are favorable to him while ignoring the other half.  The amount of the penalty assessed against Bedrosian was therefore proper under section 5321.

//

//

**Conclusion**

For the foregoing reasons, the United States' motion for summary judgment should be

granted.

Date: December 23, 2016

<div style="margin-left: 50%;">

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General

 /s/ *Katherine M. Reinhart*
KATHERINE M. REINHART
KAVITHA BONDADA
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-307-6528/6536 (v)
202-514-6866 (f)
Katherine.Reinhart@usdoj.gov
Kavitha.Bondada@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing *United States' Reply to the Plaintiff's Response to Its Motion*

*for Summary Judgment* was filed on December 23, 2016 through the Court's CM/ECF filing

system, which will automatically send a copy to the following:

Patrick Egan
Beth Weisser
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
*Counsel for the Plaintiff*


                                     /s/ *Katherine M. Reinhart*
                                       KATHERINE M. REINHART