IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR BEDROSIAN,            Plaintiff,         v.         UNITED STATES OF AMERICA, et al.,           Defendants. | Case No. 2:15-cv-05853 |

**PLAINTIFF ARTHUR BEDROSIAN'S RESPONSE TO THE
UNITED STATES' SUPPLEMENTAL BRIEFING**

Plaintiff Arthur Bedrosian ("Bedrosian") hereby responds to the supplemental briefing filed by Defendants, United States of America, et al. in the above-referenced proceedings (Doc. No. 75).

In evaluating whether Bedrosian's conduct in 2007 constituted a willful violation of 31 U.S.C. § 5314, this Court made it clear that either voluntary or reckless behavior would suffice for a willful violation. *See* September 20, 2017 Opinion at p. 8 ("District Court Op.") (finding that in addition to voluntary conduct "reckless disregard satisfies the willfulness standard" and further defining recklessness as "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"). The issue of willfulness clearly turns on a credibility determination. This Court, as the finder of fact, held that Bedrosian had not <u>willfully</u> violated the FBAR statute. District Court Op. at p. 15 ("the government has not met its burden to establish that Bedrosian willfully violated Section 5314"). Willfully, as previously defined in the opinion, meant either knowing or reckless behavior. District Court Op. at p. 8.

The United States Court of Appeals for the Third Circuit joined this Court "in holding that the usual civil standard of willfulness applies for civil penalties under the FBAR statute." *See* December 21, 2018 Opinion in *Bedrosian v. United States of America*, Case. No. 17-3525, U.S. Court of Appeals for the Third Circuit, at p. 14 (the "Third Circuit Op."). The Third Circuit remanded this matter for one reason: to determine whether this Court used the correct legal standard in its ultimate determination of recklessness. The question posed by the Third Circuit is whether Bedrosian "(1) clearly ought to have known that (2) there was a grave risk that [an accurate FBAR was not being filed] and if (3) he was in a position to find out for certain very easily." *See* Third Circuit Op. at p. 15.

The Third Circuit did not rule that this Court had failed to undertake such an analysis. It merely states that this Court "leaves the impression" that it did not consider this standard. *See* Third Circuit Op. at p. 16. The Circuit court makes this assertion despite this Court having set forth the proper legal standard for willfulness by repeatedly defining willful to include knowing and reckless (*see* District Court Op. at p. 8; p. 9 (referring to "knowing or reckless violation of a statutory duty" as the "black letter definition" of willfulness)).

Bedrosian thus avers that this Court already considered the correct legal standard for recklessness; it merely did not articulate it in the manner prescribed by the Third Circuit. Regardless, it is clear that the determination of recklessness is fact-based. This Court correctly determined that the evidence did not support a finding of recklessness both because Bedrosian's credible testimony established that he did not know that there was a grave risk that an accurate FBAR was not being filed and because the Defendants presented no evidence to support the assertion that he did. The evidence established that Bedrosian indicated control of a foreign bank account on his tax return for 2007 and that he filed an FBAR indicating both the country and

institution where that account was located. Those irrefutable facts combined with the lack of evidence produced by Defendants supports this Court's initial ruling that it was "simply not sufficiently clear from the record developed that he was willful in submitting his **inaccurate** 2007 FBAR. Rather, his actions were at most **negligent**, which does not satisfy the willfulness standard." District Court Op. at p. 10 (emphasis added).

This Court's initial opinion makes clear both that it took into account that the FBAR was inaccurate and that it considered his behavior to be "at most negligent." A determination that conduct is at most negligent is necessarily a clear determination that it is not reckless. Defendants' supplemental brief seeks to flood the Court with arguments and evidence that go well beyond the narrow scope of this exercise and that should have been submitted in the underlying trial. The evidence showed, and this Court correctly held, that even under a knowing or reckless standard, Bedrosian did not violate the FBAR statute. Defendants should not be afforded a second bite at the apple to make their case. Bedrosian respectfully requests that the Court clarify its earlier opinion to make clear that it has already evaluated Bedrosian's conduct under a willfulness standard that includes both knowing and reckless actions and affirm its prior conclusion that Bedrosian did not willfully violate the statute.

**I.  This Court Has Already Evaluated Bedrosian's Conduct Under a Willfulness Standard That Includes Both Knowing and Reckless Behavior And Concluded That He Was Not Willful.**

After repeatedly defining willful to include knowing and reckless (*see* District Court Op. at p. 8; p. 9 (referring to "knowing or reckless violation of a statutory duty" as the "black letter definition" of willfulness)), this Court held that the determination of whether Bedrosian met that standard would require a fact and context specific inquiry into his actions. After "probing the factual circumstances of this case," and largely based on the "credible testimony of Bedrosian,"

3

the Court held that it was "simply not sufficiently clear from the record developed that he was willful in submitting his inaccurate 2007 FBAR. Rather, his actions were at most negligent, which does not satisfy the willfulness standard." District Court Op. at p. 10. By finding that Bedrosian was not willful, the Court necessarily found that he acted neither intentionally nor recklessly when he omitted one of two account numbers from his 2007 FBAR.

The evidence more than supports this Court's conclusion. Bedrosian's accountant, Seymour Handelman ("Handelman") prepared his tax returns from 1972 until 2007. *See* Transcript of September 7, 2017 Bench Trial (NT) 46:25; 47:1-16, 23-25. After reading a Wall Street Journal article about Swiss bank accounts and telling Handelman that he had an account in Switzerland, Handelman told Bedrosian that he should have been checking a box on his tax return to indicate that he had an overseas account but that there was <u>nothing he [Bedrosian] could do about it at that point</u>. NT 49:11-25; 50:1-4,8-18; 51:1-4, 8-14. Handelman told Bedrosian that when his children brought the money back from Switzerland they would have to pay taxes. NT 51:18-21. Bedrosian accepted this explanation from his accountant and the two had no further discussion on the topic. NT 52:4-5.

When Handelman died in 2007, Sheldon Bransky began preparing Bedrosian's tax returns, including his 2007 tax return. NT 52:16-25; 53:1-7, 12-25; 54:1-2. On his 2007 tax return, Bedrosian responded **yes** to the question of "at any time in 2007 did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account or other financial account." NT 54:3-9. Moreover, when asked what foreign country the account was in, Bedrosian accurately and truthfully reported on his 2007 FBAR that it was in Switzerland. NT 54:11-16, Exhibit P10. At the time the 2007 FBAR was filed, Bedrosian believed that he had one account at that it was at UBS. NT 56:22-24. This belief was reflected in

4

his 2007 FBAR which stated that Bedrosian had one account, and that the account was at UBS. NT 56:12-21, 25; 57:1, Exhibit P10. The FBAR that Bedrosian filed in 2007 stated that he had between $100,000 and $1,000,000 in the account. Exhibit P10. At the time the 2007 FBAR was filed, Bedrosian thought that he had approximately that much money in his account. NT 57:7-10. On his 2008 tax return, Bedrosian responded yes to the question of "at any time in 2008 did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account or other financial account." NT 59:8-12; Exhibit P11. When asked to identify what foreign country the account was in, Bedrosian responded "Switzerland." NT 59:13-14. Bedrosian's response to these questions on his 2008 return were truthful and accurate. NT 59:15-16. Bedrosian filed an FBAR for 2008 which indicated that the account was at UBS and that it was closed. Exhibit P12; NT 59:23-24.

  Bedrosian became more aware of the significance and seriousness of reporting foreign bank account issues in 2008-2009 and became more concerned when Bransky's opinion differed from Handelman's opinion on how to handle foreign bank accounts. NT 60:16-19; 61:2-6. As a result of this concern, Bedrosian went to his personal lawyer Steven Davis and told him what had transpired with regard to the foreign account. NT 61:7-25. Because Mr. Davis is not a tax lawyer, he brought in one of his partners, Paul Ambrose. NT 62:1-6. As a result of the discussion with Mr. Ambrose, Bedrosian decided on a plan to move forward, amend all the returns and FBARs, and pay any taxes on the gains in the account. NT 62:8-16. Through Mr. Ambrose and his law firm, Bedrosian engaged an accountant named Stewart Farber to amend the returns and fix any mistakes. NT 62:17-23. Bedrosian retained Mr. Ambrose and Mr. Farber in early 2009. NT 62:24-25; 63:1-6. As a result of these discussions with Mr. Ambrose, Bedrosian also hired a lawyer in Switzerland, Christian Myer, to obtain all of plaintiff's files from the bank in Switzerland

in order to file amended returns. NT 63:7-11; 20-25; 64:1-6 At some point, Mr. Myer advised Bedrosian that UBS had provided plaintiff's account information to the IRS. NT 65:6-15. Bedrosian did not change what he planned to do regarding filing amended returns as a result of learning that UBS had turned his information over to the IRS. NT 65:16-21. Bedrosian instructed Farber to file whatever forms were necessary – income tax returns and FBARs – to rectify the situation with his foreign accounts. NT 66:21-25; 67:1, 19-22. By the summer of 2010, Bedrosian's accountant had filed all amended returns and original/amended FBARs as far back as 2003. NT 68:1-8. Also by the summer of 2010, Bedrosian had amended his tax returns to show the income on the accounts and paid all taxes and penalties associated with the foreign bank accounts. NT 68:9-17.

    Bedrosian filed his own FBAR for 2009 because he was concerned that Accountant Farber would not file it on time. NT 69:7-9; 20-23; 70:5-7; Exhibit P26. After discussion with Attorney Ambrose, Bedrosian prepared a voluntary disclosure to the IRS, which was reviewed by his attorneys. NT 71:4-18; 24-25; 72:1-7. In his voluntary disclosure form, Bedrosian advised the IRS that he had been informed that UBS was going to provide information about his account to them. NT 111:7-20; 112:10-16. Bedrosian received a letter from the IRS dated April 25, 2011 advising him that it was going to audit his returns and asking Bedrosian to provide information to aid in the audit. NT 73:12-15; Exhibit P28. Bedrosian assembled all of the documents the IRS asked for and sent them to the IRS in advance of meeting with the agents. NT 74:4-9. Bedrosian attended an interview with IRS revenue agents on October 4, 2011 in Philadelphia and answered the revenue agents' questions for three hours. NT 75:2-13. Bedrosian was absolutely truthful during his interview with the revenue agents and provided everything the agents asked for. NT 75:14-20.

Revenue Agent John West participated in the IRS interview of Bedrosian. West Deposition, 34:1-7.[1] Revenue Agent West found Bedrosian to be "very, very cooperative" during the investigation and testified that Bedrosian brought the documents requested to the interview or had given them to the IRS ahead of time. West Deposition, 34: 8-24; 11-15. Bedrosian went so far as to say that if he [Bedrosian] had to fly to Switzerland to get certain documents requested by the IRS, he would do that. West Deposition, 34:19-23. According to West, Bedrosian was completely cooperative during the examination and with everything the IRS asked for, even agreeing to sign a statute of limitations extension as part of his cooperation with the IRS. West Deposition, 51:17-24; 52:1-5; 54:5-7; NT 76:9-14. Revenue Agent and Group Manager Michael Enz also participated in the interview of plaintiff and testified that Bedrosian was cooperative during the interview. Enz Deposition, 13:18-23; 14:1-10.[2] Enz testified that plaintiff was "up-front and answered all our questions" during the interview. Enz Deposition, 14:3-4.

This narrative, developed through the credible trial testimony of Bedrosian and the deposition testimony of the IRS agents who conducted the investigation, is inconsistent with either an intentional or a reckless disregard of a known duty. Instead, it compels the Court's finding that Bedrosian was, at most, negligent in submitting an inaccurate FBAR in 2007. Defendants have not presented (and, at this stage of the proceedings, cannot present) new or contradictory evidence. Bedrosian respectfully requests that the Court affirm the September 20, 2017 Opinion.

---

[1] References to "West Deposition" are to the transcript of the deposition of Revenue Agent John West, taken July 29, 2016, portions of which were admitted into evidence during the trial of this matter. NT 116:10-25; 117:9-10.

[2] References to "Enz Deposition" are to the transcript of the deposition of Group Manager Michael Enz, taken August 11, 2016, portions of which were admitted into evidence during the trial of this matter. NT 116:10-25; 117:9-10.

### B. Defendants Misrepresent The Record and Introduce New Evidence In The Hope That This Court Will Reach a Different Conclusion

Defendants' brief is rife with mischaracterizations and distortions of the evidence submitted at trial – or lack of evidence submitted at trial. As the Court stated: "[t]he fact that there was no evidence by the government as to any wrongdoing by Mr. Bedrosian other than what was in his filing on the 2007 return I think is relevant." NT 161:25; 162:1-3. Indeed, it is difficult to understand Defendants' statement that "[t]his Court has already found uncontradicted evidence of recklessness" when this Court reached the opposite conclusion - Bedrosian was not willful, *i.e.*, not intentional or reckless, when he failed to list one account on his 2007 FBAR. Moreover, the facts Defendants identify hardly constitute recklessness. It was not reckless for Bedrosian to maintain two foreign bank accounts – even though he testified that he thought he only had one account. NT 86:9-10. It was not reckless for Bedrosian to ask his accountant for advice on how to handle his foreign bank accounts – indeed, seeking advice from a tax professional is the opposite of reckless. It was not reckless for Bedrosian to not report the account after his accountant told him that he should have been reporting it when his accountant also told him that there was <u>nothing</u> he could do about it now and his children would pay taxes on the money when they repatriated the funds.

Defendants seriously misrepresent key portions of the record. For example, they claim that Bedrosian decided to repatriate the smaller account and report it on an FBAR form <u>after</u> UBS notified him that it would be disclosing his name to the IRS. Defendants' Supplemental Brief at p. 2. In reality, UBS only told Bedrosian that he had to close his accounts, and it was not until a much later date that Bedrosian learned UBS was disclosing his name to the IRS. NT 44:2-11; 45:1-10 (UBS told Plaintiff he had to close his account in 2008); NT 62:24-25; 63:1-11; 20-25; 64:1-6; 65:6-15 (Plaintiff retained Mr. Ambrose (an attorney) and Mr. Farber (an accountant) in

8

2009 to remedy the situation; Plaintiff subsequently also retained a Swiss lawyer, Mr. Myer, and at some point thereafter Mr. Myer advised Plaintiff that UBS had provided Plaintiff's account information to the IRS). The magnitude of this misrepresentation cannot be overstated. Indeed, it is one of the six points Defendants highlight as purported "uncontradicted evidence of recklessness" when in fact it is contradicted, and by credible testimony. At the time he closed his account at UBS, Bedrosian did not know that UBS had provided or would be providing his name to the IRS.

Defendants also state that Bedrosian directed UBS to stop sending him mail in the United States but neglect to clarify that Bedrosian never asked to stop receiving mail – it was a request initiated by UBS. *See* NT 39:4-9. Defendants also describes Bedrosian as "worried" about his foreign account being discovered by the government and therefore seeking advice from his accountant. Defendants' Supplemental Brief at p. 7. Bedrosian never testified that he was "worried." He saw an article in the Wall Street Journal about foreign bank accounts that he thought was "curious" and therefore "mentioned" it to his accountant when he was preparing his taxes. NT 49:15-25. Defendants also claim that "Bedrosian knew he had two foreign accounts" and that "[i]n 2005, Bedrosian decided to open a second account." Defendants' Supplemental Brief at p. 16. This is directly contradicted by Bedrosian's credible testimony that he did not realize UBS had issued him another account number. NT 57:20-25; 58:1.

Defendants also seek to discredit testimony the Court has already found credible. They repeatedly argue that "*even if* this Court credits all of Bedrosian's testimony" as if Bedrosian's credibility were somehow in doubt or altered by the Third Circuit opinion, neither of which is true. This Court found Bedrosian's testimony to be credible. *See* District Court Op. at p. 9. Defendants are unable to alter that finding. Indeed Defendants conceded that Bedrosian was credible when

9

directly asked by the Court.  NT 153:13-17.  This Court was best situated to make credibility determinations.  *U.S. v. Kole*, 164 F.3d, 164, 177 (3d Cir. 1998) (holding that "credibility determinations are the unique province of a fact finder, be it a jury, or a judge sitting without a jury").  Defendants even go so far as to claim that the record does not support this Court's observation regarding Bedrosian's retention of tax and accounting professionals in order to rectify his FBAR filings.  *See* Defendants' Supplemental Brief at p. 21.  But the Court has thoughtfully considered all of the evidence, applied the lower standard for willfulness as advocated by Defendants, and concluded that this did not suffice for a willful violation.  Defendants cannot introduce new evidence and should not be permitted to misrepresent the evidence that already exists.

This Court is well aware of the pertinent facts, including those cited by Defendants.  Bedrosian submitted an incomplete FBAR in 2007 that identified UBS and reported the smaller of two accounts, while simultaneously filing a 2007 tax return that indicated that he had a foreign account and that the account was in Switzerland.  NT 54:3-9; 11-13; 56:12-25; Exhibit P9, P10.  This Court has already held these actions constitute an "unintentional oversight or a negligent act"; finding that Bedrosian did not give the form the requisite attention but that, even applying the lower, civil standard of willfulness (encompassing intentional and reckless conduct), this conduct does not constitute a willful violation.  *See* District Court Op. at pp. 13-14.

**II.    Defendants Failed To Meet Their Burden Of Proof At Trial Regarding the Amount Of The Penalty They Seek To Collect And Are Not Permitted To Do So Now.**

    **A.    Defendants' Supplemental Briefing On The Amount Of The FBAR Penalty Assessment Is Improper And Should Be Stricken.**

The Third Circuit remanded these proceedings to this Court to clarify the very narrow issue of whether this Court evaluated Bedrosian's conduct under a willfulness standard that includes both knowing and reckless conduct.  *See* Third Circuit Op. at p. 16.  During a February 4, 2019

10

conference call with the Court and all counsel, it was established that "neither party wishes to reopen the factual record . . . ." *See* February 4, 2019 Scheduling Order, Doc. No. 72. Despite the Third Circuit's directive and despite previously confirming to the Court that it did not wish to reopen the factual record, Defendants spend a significant amount of time arguing that "the amount of the FBAR penalty assessment was proper," including how it was calculated, why Bedrosian would not qualify for a reduction, and why Bedrosian would owe interest and a late payment penalty. *See* Defendants' Supplemental Brief at pp. 23-29. Defendants, recognizing that they failed to offer any credible evidence regarding the penalty calculation during the trial, are now attempting to slip this information in under the guise of supplemental briefing on an unrelated issue. This Court should disregard and in fact strike that portion of Defendants' brief addressing calculation of the penalty because it is beyond the scope of these proceedings at this stage and is inconsistent with counsel's prior representations to the Court. Moreover, "the unexplained failure or refusal of a party to judicial proceedings to produce evidence that would lead to throw light on the issues authorizes, under certain circumstances, an inference or presumption unfavorable to such party." *Felice v. Long Island R.R. Co.,* 426 F.2d 192 (2d Cir. 1970), *cert. denied,* 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970); *United States v. Cherkasky Meat Co.,* 259 F.2d 89 (3d Cir. 1958); 31A C.J.S. Evidence § 156(2); 29 Am. Jur .2d Evidence § 178. This is a circumstance where such an adverse inference is warranted.

### B. Defendants Were Required To Prove The Amount Of The Penalty They Seek To Collect At Trial And Failed To Do So.

Defendants are not entitled to a "do-over" to correct their failure to prove the amount of the penalty they seek to collect against Plaintiff. Defendants seek to recover more than $1,007,345.45 from Bedrosian (as of September 2015) for his alleged willful violation of the FBAR statute but wholly failed to meet their burden of proof to substantiate that figure. Upon

11

finding that Defendants had failed to meet their burden as to willfulness, this Court declined to analyze the calculation of the penalty amount. *See* District Court Op. at p. 14. However, if this Court had undertaken that analysis, it would have found that Defendants failed to offer any credible evidence to prove how the penalty was calculated or that the penalty amount was correct.

At trial, in support of the claimed penalty, Defendants offered Government Exhibit A ("Form 13448 Penalty Assessment Certification (Title 31 "FBAR")") and the trial testimony of Nancy Beasley. Ms. Beasley testified that she "prepared" Government Exhibit A by taking a piece of paper with the penalty already calculated from the agent who conducted the examination, inputting that number into her computer, and printing out the form that constitutes Government Exhibit A. (NT 122:22-25; 123:25: 124:1-14). Significantly, Ms. Beasley:

- Had no role in determining the penalty assessed against plaintiff (NT 123:10-11);

- Received the penalty information from someone else (NT 123:12-13);

- Had no idea how the Defendants determined the penalty (NT 123:14-16);

- Did not know where the information came from that Defendants relied upon to determine the penalty (NT 123:17-19);

- Did not know whether the person calculating the penalty took into account whether certain assets in a foreign account were the proceeds of a loan (NT 123:20-24);

- Had no idea what issues related to the individual's account may or may not impact how the penalty was determined or if it is even accurate (NT 124:18-21).

Perhaps most damning to Defendants' case, Beasley testified that she had "**no knowledge**" as to where the calculation of the penalty came from. NT 123:23-24. In pre-trial proceedings, Bedrosian asked Defendants to provide information regarding the scope of Ms. Beasley's testimony. Defendants responded "[W]e expect to offer Ms. Beasley's testimony to authenticate

records of the Internal Revenue Service with respect to the amount of the penalty assessed against the plaintiff <u>and to explain the calculation of the penalty</u>, as well as interest and late-payment penalty." (emphasis added). *See* August 10, 2017 letter attached hereto as Exhibit A. To use Ms. Beasley's own words from trial: "I have **no knowledge** to where the calculation of this amount comes from." (NT 123:23-24) (emphasis added). Defendants' supplemental brief now attempts to submit the arguments of counsel in lieu of competent evidence regarding the penalty calculation.

Ms. Beasley testified that the "agent that conducts the examination" (NT 122:24-25) calculates the penalty, but Defendants chose not to call that agent and, in fact, filed a motion *in limine* to preclude any evidence regarding the actions, analysis, conclusions, opinions, or statements of the Internal Revenue Service personnel during its investigation. *See* Doc. No. 43. By not calling the agent, and by not presenting a witness with any knowledge regarding the calculation of the penalty, Defendants denied plaintiff his right to cross-examine a witness on this crucial issue and therefore denied him due process. *See Jasin v. Michael, Best & Friedrich, LLP*, 409 Fed.Appx. 575, 578-79 (3d Cir. 2011) (finding that "an opportunity to cross-examine witnesses or to respond to written evidence" is one of the "essential elements" of due process.) (internal citations omitted).

As the Court noted in its opinion granting Defendants' motion *in limine*, this trial was Plaintiff's chance for the adjudicatory hearing that he was denied during the IRS investigation. Doc. No. 52 at p. 5. By failing to present a witness with any knowledge of how the penalty was calculated, the government denied Plaintiff that opportunity. Defendant cannot use the narrow directive from the Third Circuit to attempt to explain the calculation it failed to prove at trial, but Defendants attempt to do just that on pages 23-28 of its Supplemental Brief. There was no evidence at trial to support these calculations and they must be disregarded.

C.   **Any Attempt By Defendants To Rely on Exhibit R Must Be Rejected Because That Exhibit Is Not Admissible**

To support the claimed penalty, at trial Defendants sought the admission of Government Exhibit R and Government Exhibit T, but offered no witness to testify regarding either of these documents, making them textbook examples of hearsay. *See* Fed. R. Evid. 801(c)(1)-(2). In response to Plaintiff's hearsay objection at trial (NT 135:15-19), Defendants argued that these documents were encompassed within Government Exhibit U ("Certification of Business Records") and therefore qualify as an exception to the hearsay rule. Defendants are mistaken.

Federal Rule of Evidence 803(6) sets forth the hearsay exception for Records of a Regularly Conducted Activity. The premise behind the business records exception is that documents purportedly encompassed by it are inherently reliable and trustworthy. *See Uitts v. General Motors Corp.*, 411 F.Supp. 1380, 1382 (E.D. Pa. 1974) (excluding reports prepared for sole purpose of alerting manufacturer about possible difficulties because they did not have indicia of reliability to qualify for admission under business records exception); *U.S. v. Saldana*, 2010 WL 3119967, *14 (Aug. 4, 2010, D. V.I.) (finding that defendant failed to show that a document fell under the business records hearsay exception when defendant himself wrote the document and, therefore, it lacked trustworthiness). Furthermore, records that are prepared in anticipation of litigation are not admissible under the business records exception to the hearsay rule. *Aamco Transmissions, Inc. v. Baker*, 591 F.Supp.2d 788, 794 (E.D. Pa. 2008) (excluding memo prepared by director of consumer affairs because it was created in anticipation of litigation and not in the course of regularly conducted business activities).

*U.S. v. Pelullo*, 964 F.2d 193 (3d Cir. 1992) demonstrates just how demanding the Third Circuit views the foundational requirements of the Rules of Evidence. In that case, the defendant was convicted of various RICO violations and he appealed. On appeal, the Third Circuit held that

14

there was insufficient foundation for wire transfer documents to be admitted under the business records exception. 964 F.2d at 200. The government argued that the documents could be admitted because there were sufficient "circumstantial guarantees of trustworthiness" such as the documents being obtained in response to grand jury subpoenas directed to the corporations and the bank; testimony of witnesses involved in the transactions corroborated the information in the records, and defendant had not stated any reason why the records were not reliable. *Id.* at 201. The Third Circuit found no authority holding that "the court may admit into evidence under the business exception to the hearsay rule documents containing hearsay simply because there are some indicia of the trustworthiness of the statement." *Id.* Indeed, to qualify for the business records exception, the document must be one where "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Exhibit R lacks all indicia of reliability and trustworthiness and Defendants failed to offer any foundation, let alone sufficient foundation, to justify its admission. They failed to even identify, on the most basic level, what it is, and there was no testimony or other evidence to tell the Court what it is. It is black letter law that statements from a lawyer do not constitute evidence. *See* Third Circuit Model Civil Jury Instructions 1.5 ("The following things are not evidence: [s]tatements, arguments, and questions of the lawyers for the parties in this case ….) Exhibit R makes no mention of (i) plaintiff's name, (ii) the bank where it allegedly originated, or (iii) plaintiff's bank account numbers. It failed to state when it was prepared or by whom. Separate from the hearsay objection, Exhibit R isn't even relevant. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Exhibit R fails to make anything more or less probable. In fact, without testimony to

15

explain what it is or why it is relevant, Exhibit R is meaningless and the Defendants have presented no such testimony.

The business records certification at Government Exhibit U fails to cure the problem. Most notably, the business records certification fails to tie Exhibit R to the plaintiff, to his bank accounts, or to this case. Based on the heavy redactions contained throughout the attachment to Exhibit U, it is evident that the certification was a generic document prepared more than seven years ago and in no way specific to plaintiff or his accounts. Even the most detailed review of Exhibit R, its attachments, and Exhibit U would leave the reader clueless as to what Exhibit R is, where it came from, or to whom it applies. It is not relevant; it certainly does not qualify as an exception to the rule against hearsay; and it could not possibly support Defendants' arguments regarding the calculation of the claimed amount due.

Defendants failed to prove the amount they seeks to collect from Bedrosian, despite having ample opportunity to do so at trial. Defendants agreed that it was not seeking to reopen the record at this stage of the proceeding and there is no competent evidence to substantiate the amount of the penalty or how it was calculated.

### III.     Conclusion

This Court has already applied the correct standard for willfulness and evaluated Bedrosian's conduct to determine if it was either knowing or reckless. It found that Bedrosian was, at most, negligent. Defendants once again ask this Court to make a tremendous leap and find Bedrosian willful for having submitted an incomplete FBAR in 2007. The Court declined to make that leap initially and should decline to make it again. Bedrosian respectfully requests that this Court affirm its September 20, 2017 decision and find that Bedrosian did not willfully violate the FBAR statute.

                        Respectfully submitted,

                        ___/s/ Patrick J. Egan_____
                        Patrick J. Egan, Esquire
                        Beth L. Weisser, Esquire
                        FOX ROTHSCHILD LLP
                        2000 Market Street, 20th Floor
                        Philadelphia, PA 19103
                        (215) 299-2000 (telephone)
                        (215) 299-2150 (fax)

                        *Attorneys for Plaintiff Arthur Bedrosian*

Date: April 12, 2019

## **CERTIFICATE OF SERVICE**

I, Beth L. Weisser, hereby certify that Plaintiff's Response to the United States'

Supplemental Briefing was served by ECF and email, upon the following:

Katherine M. Reinhart, Esquire
Kavitha Bondada, Esquire
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
Katherine.Reinhart@usdoj.gov
Kavitha.Bondad@usdoj.gov

        /s/ Beth L. Weisser
        Beth L. Weisser

Date: April 12, 2019