IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARTHUR BEDROSIAN<br><br>v.<br><br>THE UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE | CIVIL ACTION<br><br>NO. 15-5853 |

**MEMORANDUM ON REMAND FROM THIRD CIRCUIT**

**Baylson, J.**                                                                                          **December 4, 2020**

Following this Court's Findings of Fact, Conclusions of Law, and Judgment filed September 20, 2017, and an appeal filed by the United States, the Third Circuit ordered a remand. Bedrosian v. United States, Dep't of Treasury, IRS, 912 F.3d 144 (3d Cir. 2018) ("Bedrosian II"). Following additional briefing by the parties, and review of the entire record, this Court will vacate the prior judgment, supplement the prior findings and conclusions, and enter judgment for the United States.

## I. Introduction

This case is not novel, but deals with the relatively arcane topic of tax litigation, arising out of a taxpayer being assessed a penalty for failure to file an IRS form, the Report of Foreign Bank & Financial Accounts, commonly referred to as a "FBAR."[1] The obligation to file a FBAR arises out of the taxpayer having maintained control over foreign bank accounts. The full details and factual history of the case will not be repeated here.

## II. Procedural History

---

[1] REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS (FBAR), https://www.irs.gov/businesses/small-businesses-self-employed/report-of-foreign-bank-and-financial-accounts-fbar (last visited Dec. 2, 2020).

Taxpayer Arthur Bedrosian, filed this action on October 27, 2015 seeking to obtain a refund of $9,757.99 that he paid to the IRS for his allegedly "willful" violation of the FBAR filing requirement. The government counter-claimed for the full amount of the penalty it had assessed, arguing that Bedrosian owed $1,007,345.48. After denying cross-motions for summary judgment, the Court held a non-jury trial and entered Findings of Fact and Conclusions of Law. See Bedrosian v. United States, No. 15-5853, 2017 WL 4946433 (E.D. Pa. Sept. 20, 2017) ("Bedrosian I").

**III. The Third Circuit's Opinion**

On appeal, the Third Circuit concluded that this Court had jurisdiction and agreed that the willfulness standard in the FBAR context was the same as in other civil contexts, but it held that the Court's findings and conclusions did not contain a sufficiently clear consideration of all the relevant facts in making a conclusion that Bedrosian's conduct was not "willful." In its original findings, this Court compared Bedrosian's conduct with conduct that other courts reviewed in finding FBAR violations, on which the Government had heavily relied. This Court found that Bedrosian's conduct, although it would allow a finding that he was "negligent," did not justify a conclusion of "willfulness."

The Third Circuit noted that "a person commits a reckless violation of the FBAR statute by engaging in conduct that violates an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Bedrosian II, 912 F.3d at 153 (quotations omitted). It then referenced the test for recklessness in other tax contexts as the test that should be applied here:

> With respect to IRS filings in particular, a person "recklessly" fails to comply with an IRS filing requirement when he or she "(1) clearly ought to have known that (2) there was a grave risk that [the filing requirement was not being met] and if (3) he [or she] was in a

2

>position to find out for certain very easily." United States v. Carrigan, 31 F.3d 130, 134 (3d Cir. 1994) (quoting United States v. Vespe, 868 F.2d 1328, 1335 (3d Cir. 1989)) (alterations in original).

Bedrosian II, 912 F.3d at 153. As this quotation shows, the Third Circuit did not rely on any FBAR precedents. The Third Circuit directed this Court to consider other cases in the taxation realm, which had found that certain taxpayer conduct was "willful" because it satisfied an objective standard of recklessness, as well as cases from other circuits which have applied this test in the FBAR context.

## IV. Supplemental Findings of Fact

This opinion will not review the entire record but will supplement the prior findings of fact after considering the precedents on which the Third Circuit relied, and further review of the evidence from the standpoint of whether, viewed objectively, Bedrosian's conduct was reckless and therefore willful. The Government's reply brief on remand (ECF 77), notes several items of evidence which the Court agrees support a finding that Bedrosian's conduct was reckless:

>1. Bedrosian's cooperation with the Government, which this Court emphasized as negating willfulness, began only after he was exposed as having hidden foreign accounts.

>2. Shortly after filing the 2007 FBAR, Bedrosian sent two letters to his Swiss bank directing closure of two accounts, but only one of these accounts had been disclosed on his FBAR. The second account was moved to a different Swiss bank and the funds were not repatriated to the United States.

>3. Bedrosian does not dispute he saw an article in The Wall Street Journal about the federal government tracing mail coming into the United States and was therefore alerted to the possibility of the United States finding out about his foreign bank accounts if the bank sent information through the mail.

4. Bedrosian's Swiss accounts were subject to a "mail hold." He does not dispute the existence of the mail hold or that he signed a form and paid a fee to the bank for this benefit. The Government relies on this point of evidence for the fact that Bedrosian paid a fee for a service, the purpose of which was to prevent correspondence from the foreign bank being tracked by the IRS.

5. Bedrosian also acknowledged that he was aware of the significant amount of money held in his foreign bank accounts.

These findings supplement the findings from this Court's earlier opinion that:

> the only evidence supporting a finding that Bedrosian willfully violated Section 5314 is: (1) the inaccurate form itself, lacking reference to the account ending in 6167, (2) the fact that he may have learned of the existence of the second account at one of his meetings with a UBS representative, which is supported by his having sent two separate letters closing the accounts, (3) Bedrosian's sophistication as a businessman, and (4) Handelman's having told Bedrosian in the mid-1990s that he was breaking the law by not reporting the UBS accounts.

Bedrosian I, 2017 WL 4946433, at *6.

In summary, this Court's prior analysis was focused almost entirely on Bedrosian's subjective intent and did not adequately consider whether the evidence warranted a conclusion, from an objective point of view, whether Bedrosian acted either "knowingly or recklessly" in failing to file a FBAR.

### V. Discussion of Law

In the civil context, willfulness "cover[s] not only knowing violations of a standard, but reckless ones as well." Fuges v. Southwest Fin. Servs., Ltd., 707 F.3d 241, 248 (3d Cir. 2012). Recklessness is defined as "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Safeco

Ins. Co. of Am. v. Burr, 551 U.S. 47, 68 (2007) (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)).

Both Third Circuit cases cited by the Third Circuit in Bedrosian apply the willfulness standard in the context of failure to pay employment taxes. In Vespe, the Court stated that acting willfully includes "pay[ing] other creditors in preference to the IRS when he knows taxes are due" as well as paying "other creditors with reckless disregard for whether taxes have been paid." 868 F.2d at 1335. The taxpayer argued that his actions could not meet the definition of willful because he did not have control of the funds used to pay taxes and that he was hospitalized and subsequently incarcerated during the relevant time period. Id. at 1331. In finding that the defendant at least acted recklessly with respect to his tax obligation, the Court noted that he paid other creditors and therefore "should have strongly suspected that [his company] might have also neglected to pay its taxes." Id. at 1335. Furthermore, "[h]e presented no evidence that he took any steps to determine whether or not [his taxes] had been paid, or that such an inquiry would have been difficult or unavailing." Id.

In Carrigan, the Third Circuit found that the District Court erred by granting summary judgment in favor of the United States on the issue of willfulness. 31 F.3d at 135. The defendant was a company executive who was aware the company was behind on its taxes and loaned the company money in order to pay its debts. Id. at 132. The Third Circuit found there was a genuine dispute of material fact regarding whether the defendant's actions were willful because the record was not clear as to how the defendant directed creditors should be paid. Id. The record demonstrates that he "lent the company $ 20,000.00 to pay its creditors, including the IRS, but took no other steps to direct that the tax liability be paid." Id. at 134. However, "the record also establishes that the one check that [the defendant] did sign . . . was paid to the IRS." Id. The

record was also "not clear concerning whether the check to the IRS came from the funds lent by [the defendant] or from some other source" and "about how much tax was due when [the defendant] signed the check to the IRS." Id. The court noted "his admittedly limited access to the company's tax and other financial records" in finding that he "may not have acted with reckless disregard of whether the taxes were being paid when he took no steps to direct that the $20,000.00 be applied exclusively to" paying the IRS. Id.

There are also two Fourth Circuit cases relevant here. The Third Circuit in Bedrosian cited to United States v. Williams, 489 F. App'x. 655 (4th Cir. 2012), a case applying the willfulness standard in the context of a FBAR penalty. The government also filed supplemental authority in this case regarding United States v. Horowitz, 978 F.3d 80 (4th Cir. 2020), a more recent Fourth Circuit decision concerning willful failure to file a FBAR.

This Court discussed Williams in its original opinion in this case:

> In Williams . . . the defendant deposited over $7 million into two Swiss bank accounts and failed to report the income from those accounts to the IRS from 1993 to 2000. Williams, 489 F. App'x at 656. In the fall of 2000, government authorities became aware of the accounts, the defendant retained counsel, and Swiss authorities froze both accounts. Even after facing significant government scrutiny regarding his compliance with federal reporting requirements, the defendant nevertheless filed an FBAR for tax year 2000 in which he did not disclose his interest in either Swiss account. The defendant also allocated, in connection with a simultaneous criminal investigation, to having unlawfully failed to report the existence of the Swiss accounts on his 2000 FBAR. On these facts, the Fourth Circuit overturned the district court's finding that the defendant's violation of Section 5314 had not been willful, reasoning that the above-recited facts at least established reckless conduct. Id. at 660.

Bedrosian I, 2017 WL 4946433, at *5. On further review of the record in light of the Third Circuit's opinion, there are very few differences between the conduct in Williams and Bedrosian.

This Court erred when it concluded, as stated in the above discussion, that Bedrosian fully cooperated with the IRS and did not make false statements.

In Horowitz, the Court found several circumstances which warranted a finding of willfulness.  First, the Court explained that the defendants knew their interest income from domestic bank accounts was taxable and that their foreign income was taxable, and it would make no sense to conclude that foreign interest was not taxable.  978 F.3d at 89-90.  Next the Court found that the foreign account was set up with "'hold mail' service, which the bank knew would and did assist U.S. clients in concealing assets and income from the IRS."  Id. at 90.  Even though defendants denied requesting this service, the Court noted they would have become aware of it. Id.  The Court also noted that the amounts in the account were significant and thus not "susceptible to being overlooked."  Id.  Lastly, the Court noted that they answered "no" to a question on their tax returns asking whether they had a foreign bank account.  Id.  Even if they did not review the returns, they signed them "representing to the IRS, under the penalties of perjury, that the returns were accurate."  Id.

There are a few other District Court cases which apply the objective recklessness test in the context of a willful violation of the FBAR reporting requirement.  In Brounstein v. United States, the Court found that Brounstein's actions demonstrated a reckless disregard for whether taxes were being paid.  No. 90-6393, 1992 WL 10478, at *3 (E.D. Pa. Jan. 16, 1992) (Dalzell, J.), aff'd, 979 F.2d 952 (3d Cir. 1992).  The Court's finding was based on the following facts:

> Brounstein signed every quarterly employment tax return showing the amount of tax due. No check was ever remitted with the returns. Since Brounstein signed nearly every check [the company] issued, he knew there were no checks in favor of the Internal Revenue Service for payroll taxes withheld.

7

Id. In Abel v. United States, the Court specifically contrasted Brounstein finding that "the debtor signed only a few checks to creditors, and did not sign or prepare tax returns." 200 B.R. 816, 824 (E.D. Pa. 1996) (DuBois, J.). The Court noted that

> [t]hese differences are important because the greater control and responsibility one has over the taxes and finances of company, and over the payment of creditors, the sooner one 'clearly ought to have known' of the risk that withholding taxes were not paid. In some situations where the taxpayer had greater immediate control over and responsibility for a company's finances, bookkeeping or check writing, knowledge that the company has financial difficulties could be sufficient to establish recklessness with respect to nonpayment of taxes, but that is not true in this case.

Id.

Most recently, in Samango v. United States, Judge Tucker found that Samango acted willfully in failing to pay taxes because he "ought to have known that there was a grave risk that withholding taxes were not being paid and he was in a position, if not the best position, to find out for certain very easily." No. 17-2484, 2019 WL 2525741, at *8 (E.D. Pa. June 18, 2019), aff'd, No. 19-2682, 2020 WL 6336021 (3d Cir. Oct. 29, 2020). The Court based this finding on five facts: (1) Samango "had, at a minimum, some level of knowledge about [the] business," (2) he was a part owner of the business, (3) he later became President of the business and signed "state tax returns and other documents submitted to state authorities communicating detailed information about [the] business," (4) he knew that the business "was not paying state unemployment compensation taxes and failed to make payments to the State Workers' Insurance Fund," and (5) he knew that the business "had 'little experience' in business and subcontracting." Id. at *13.

**VI. Analysis**

The specific question on remand from the Third Circuit is whether Bedrosian acted willfully when he failed to list one of his two Swiss bank accounts on his 2007 FBAR. Based on

the legal standard and supplemental findings of fact laid out above, this Court finds that Bedrosian's actions were willful because he recklessly disregarded the risk that his FBAR was inaccurate. The Court notes that the concept of willfulness encompasses both knowing and reckless conduct. As the Third Circuit emphasized, in the law of taxation, reckless conduct can be violative of IRS statutes and/or rules, from an objective point of view, even if not "willful" from a subjective point of view.

Previously this Court did not consider whether, when his 2007 FBAR filing came due, Bedrosian "(1) clearly ought to have known that (2) there was a grave risk that [an accurate FBAR was not being filed] and if (3) he was in a position to find out for certain very easily." Carrigan, 31 F.3d at 134 (quoting Vespe, 868 F.2d at 1335 (internal quotation omitted)). The Court thus left the impression it did not consider whether Bedrosian's conduct satisfies the objective recklessness standard articulated in similar contexts.

The most factually similar case to this one is Horowitz. In Horowitz, the Fourth Circuit found that even if the Horowitzes were not aware of the FBAR reporting requirement, based on their knowledge of taxes on interest income, it did not make sense for them to conclude that their foreign accounts would not be taxed. Here, Bedrosian knew about the FBAR requirement because his prior accountant told him about it. The Fourth Circuit also noted that the Horowitzes used "hold mail" service, as did Bedrosian. The Horowitzes had a significant amount of money in their accounts, which the Court found meant the accounts were not easily overlooked. The amount in their account was comparable to the amount in Bedrosian's accounts (around $1.6 million compared to around $1.9 million). Lastly, the Fourth Circuit found that even if the Horowitzes did not review their taxes, they signed them and were thus representing their answers to the

government under penalty of perjury. Bedrosian also claims to not have reviewed his FBAR closely, but he like the Horowitzes signed the form.

While the majority of cases applying the recklessness test do not concern FBAR filings, they emphasize the importance of how an individual's general awareness of a business's operations can impact the analysis of willfulness when it comes to evaluating their actions. These cases generally suggest that when a taxpayer is responsible for reviewing tax forms and signing checks, the taxpayer is responsible for errors that would have been apparent had they reviewed such forms and checks closely. In this instance, if Bedrosian had looked at the forms he signed, it is reasonable to conclude that he should have noticed the amount stated for the accounts was not accurate. On the 2007 FBAR, the box indicating that there is less than one million dollars in his account is checked. During trial, the following exchange occurred:

> Q. Your UBS accounts had more than $10,000 in them in 2007?
>
> A. Oh, absolutely. Yes.
>
> Q. In fact, you knew that your 6167 account had over 1 million dollars in it?
>
> A. I'm sorry, you keep confusing me with the account number, but a 236.167, yes, had over a million dollars in it. That was the main account.

Even if Bedrosian did not know that there were two accounts, the stated amount should have prompted him to investigate further, which he could have done easily by contacting the bank. Further, based on Third and Fourth Circuit precedent, claiming to not have reviewed the form does not negate recklessness. Thus, the Court can infer that Bedrosian had reason to know of his second overseas account and that he did not disclose it.

Of importance here as well are the undisputed facts that Bedrosian received advice from his tax preparer that he was breaking the law by not reporting his overseas bank accounts and that

he was a sophisticated and successful businessman.  Bedrosian knew or should have known the form which he signed was inaccurate.

## VII.     Conclusion

This Court, after review of the evidence, concludes that it must use a more expansive concept of willfulness that includes reckless conduct considered from an objective point of view. Accordingly, this Court concludes that Bedrosian's conduct was willful under settled case law. An appropriate Order follows.

O:\CIVIL 15\15-5853 Bedrosian v United States\15cv5853 memorandum on remand.docx