IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARTHUR BEDROSIAN,** | ) |
| **Plaintiff,** | ) ) ) Case No. 2:15-cv-05853 |
| v. | ) ) |
| **UNITED STATES OF AMERICA, et al.,** | ) ) |
| **Defendants.** | ) ) |

**PLAINTIFF ARTHUR BEDROSIAN'S RESPONSE TO DEFENDANT'S
STATEMENT REGARDING PENALTY CALCULATION**

Plaintiff Arthur Bedrosian hereby submits the following response regarding calculation of the penalty in the above-referenced proceeding. Recognizing the very real problem of having not offered any competent evidence to substantiate the penalty it seeks to collect, defendant claims that plaintiff has made a binding admission regarding the amount of the penalty (while ignoring contradictory evidence) and relies upon a footnote to argue that the Court can just "repeat" the math using exhibits it offered at trial but failed to substantiate.

**I.   There Has Been No Admission.**

To be binding, judicial admissions must be unequivocal. *Glick v. White Motor Co.*, 458 F.2d 1287 (3d Cir. 1972). "An unequivocal statement is one that is clear, unambiguous and expresses only one meaning." *Phila. Reinsurance Corp. v. Employers Ins. of Wasau*, 61 Fed.Appx. 816 (3d Cir. 2003). Defendant notes that plaintiff "admitted" that "the penalty amount was calculated as 50% of Bedrosian's bank account balance for the account ending in 6167, or fifty percent of $1,951,578.34, which equals $975,789.17." That is far from an unequivocal, clear and unambiguous admission that the calculation of the penalty is <u>correct,</u> which Bedrosian has never admitted. In fact, plaintiff has repeatedly denied defendant's allegations regarding the amount of the penalty purportedly owed. *Compare* Defendant's Answer and Counterclaim (Doc. No. 5, Counterclaim ¶ 18) with Plaintiff's Reply to Counterclaim (Doc. No. 7, ¶ 18); Defendant's Stmnt. of Undisputed Material Facts in Support of Motion for Summary Judgment (Doc. No. 22-3, ¶ 53) with Plaintiff's Response to Defendant's Motion for

Summary Judgment (Doc. No. 26-1, ¶ 53).  Plaintiff's express denials, combined with acknowledging how the penalty was calculated, hardly constitutes an unequivocal admission sufficient to negate defendant's burden.[1]

Moreover, and more importantly, defendant's claim that plaintiff admitted the accuracy of the $975,789 penalty assessment entirely ignores plaintiff's trial testimony that approximately 750,000 Swiss francs[2] of the account balance used to calculate the penalty constituted a loan.  *See* NT 42:10-24; 43:3-6.  Plaintiff never considered the loan to be his money.  NT 43:20-22.  And, in 2008, UBS told plaintiff that he had to repay the loan.  NT 44:2-11; 45:1-10.[3]  Plaintiff also testified about the loan from UBS during his deposition, and that testimony was consistent with his trial testimony that the loan was not his money.  *See* Transcript p. 280:4-25; p. 281:1-25, p. 282:1-25, p. 283:1-10 (attached hereto as Exhibit A).

## II.     Defendant's Exhibits And Witness Fail To Satisfy Its Burden.

Plaintiff addressed the various shortcomings of defendant's exhibits offered to substantiate the amount of the penalty in his post-trial brief (Doc. No. 62) and again in greater detail in his statement regarding calculation of the penalty (Doc. No. 90).  Plaintiff's objections to defendant's trial exhibits were timely as they were directly related to the witness offered at trial to supposedly authenticate/explain the documents and the penalty calculation.  That witness – Nancy Beasley – had no knowledge of those documents or the penalty calculation, thus giving rise to the timely objection.

Finally, defendant's audacious claim – in a footnote – that the Court can just "repeat the math" if it finds Exhibit T inadmissible must be rejected.  Defendant seeks to collect more than $1,000,000.00 from plaintiff.  Defendant had a full and fair opportunity to present witnesses and documents to substantiate this number and satisfy its burden.  Defendant failed in meeting this burden and is not allowed a "do-over" in a footnote.

---

[1] Plaintiff's acknowledgment that an account contained approximately $2 million dollars at a certain point in time is even further removed from satisfying the standard for a judicial admission regarding the proper amount of the penalty.

[2] In September 2013 (the date of defendant's original demand to plaintiff), 750,000 Swiss francs was worth approximately $832,500 US dollars.

[3] Defendant admitted that plaintiff's trial testimony was truthful.  NT 150:3-8.

     For all of the foregoing reasons, plaintiff Arthur Bedrosian respectfully submits that defendant has failed to meet its burden to prove the amount of the penalty it seeks to collect and therefore the penalty is zero.

                                      Respectfully submitted,

                                      /s/ Patrick J. Egan
                                  Patrick J. Egan, Esquire
                                  Beth L. Weisser, Esquire
                                  FOX ROTHSCHILD LLP
                                  2000 Market Street, 20th Floor
                                  Philadelphia, PA 19103
                                  (215) 299-2000 (telephone)
                                  (215) 299-2150 (fax)

                                  *Attorneys for Plaintiff Arthur Bedrosian*

Date: January 19, 2021

# EXHIBIT "A"

Arthur P. Bedrosian  October 7, 2016
Phliadelphia, PA

Page 233

```
 1            UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                      - - -

 3   ARTHUR BEDROSIAN,        :
             Plaintiff,       :
 4                            :
     vs.                      :   NO.: 2:15-cv-05853
 5                            :
     UNITED STATES OF         :
 6   AMERICA, et al.,         :
             Defendants.      :
 7
                              - - -
 8                        VOLUME II
                              - - -
 9

10           Continued oral deposition of ARTHUR P.

11   BEDROSIAN, taken at Fox Rothschild LLP, 2000 Market

12   Street, 20th Floor, Philadelphia, Pennsylvania, on

13   Friday, October 7, 2016, beginning at approximately

14   10:00 a.m., before Maureen E. Broderick, Registered

15   Professional Reporter and Notary Public in and of

16   the Commonwealth of Pennsylvania.

17

18

19

20

21

22

23

24

25
```

Arthur P. Bedrosian                                              October 7, 2016
Phliadelphia, PA

Page 280

1      Q    When you say "they put into the
2   account" --
3      A    UBS.
4      Q    Let me finish the question.
5           When you say "the money they put into
6   the account," what money and who put it into the
7   account?
8      A    UBS offered to loan $700,000 to me.  They
9   would put it in an account, they would manage that
10  as well, and they would charge 2 percent interest
11  for that.  So I'm presuming since the difference
12  here is $700,000 approximately, that may be the
13  difference.  So that is not my money.  700 is the
14  money they loaned to the account.
15          Also, under the line that you're
16  ignoring, it says total net asset value, a
17  million-six-six-seven.
18     Q    When you say that money is not yours, why
19  wasn't it your money if it was a loan to you?
20     A    Because it wasn't loaned to me in a sense
21  that someone gave me $700,000 and said, Here's your
22  money, pay it back, do what you want with it.  I
23  never received the money physically, ever.
24          They claimed they put it in the
25  account.  They claim they invested it as part of the

1-800-FOR-DEPO                                           www.aldersonreporting.com

```
                                                              Page 281
 1   management.  They claim they either made or lost
 2   money on it.  They claimed the 2 percent interest
 3   fee for the use of the money.  I never saw it in any
 4   way tangible.
 5                 I couldn't take it away from the
 6   bank.  I couldn't go buy a car with it.  It was
 7   money that they said they put in the account.  I
 8   have to take them at their word.  They said they
 9   did.  I have no proof they put the money in.
10        Q    When you say you have no proof they put
11   the money in, what does that mean?
12        A    What part of that don't you understand?  I
13   don't have any proof they put the money in.  I have
14   no evidence they did that.
15        Q    As in did you ever receive a bank
16   statement saying that money had been deposited into
17   the account?
18        A    I did not receive a bank statement that
19   said they put the money in, correct.
20        Q    So if this money was not yours, then what
21   was the purpose of putting it in the account or
22   taking that loan?
23        A    You asked that in the previous deposition.
24   They offered to loan money to me at 2 percent
25   interest, manage that money for me in the account in
```

Arthur P. Bedrosian  October 7, 2016
Phliadelphia, PA

Page 282

1  the hopes they would earn more money than the
2  2 percent interest than I was paying for the use of
3  the money.  This was a proposal they made to me.
4  Seemed like a good idea at the time.
5      Q    And your claim is that the difference
6  between the total gross asset value and the total
7  net asset value, that was not your money in this
8  account?
9      A    Well, if it includes the $700,000 loan, as
10 I suspect it does, because this document doesn't
11 explain or show that, and I didn't want you to put
12 on the record that the value account was two-three
13 without -- and ignoring that potentially $700,000 of
14 that two-three was the bank's money.
15           That's how this value went up.  It's
16 not clear.  The account was not worth
17 two-million-three, I believe, without their 700,000,
18 is what I'm saying.
19           MS. BONDADA:  Can you read back the
20      question that I asked.
21                     - - -
22                (Whereupon, the Reporter read
23                back a preceding portion of the
24                testimony as directed:
25                "Q.  And your claim is that the

Page 283

```
 1                         difference between the total
 2                         gross asset value and the total
 3                         net asset value, that was not
 4                         your money in this account?")
 5    BY MS. BONDADA:
 6        Q    Is the answer to that question yes or no?
 7        A    If someone loans me money, it's not mine.
 8    It's a loan.  So I'm going to say the answer is no,
 9    it was not mine.  It was loaned to me by the bank.
10    It was their money.
11                    (Exhibit Government-35 was
12                     marked for identification.)
13    BY MS. BONDADA:
14        Q    Now I'm showing you what was marked as
15    P-2711.  We'll mark this as Exhibit 35.
16        A    Okay.
17        Q    This document says it's an overview of
18    total assets for the account ending with 5316?
19        A    That's correct.
20        Q    And the statement of assets is as of
21    December 2007, is that correct, top right-hand
22    corner?
23        A    Yes.
24        Q    The total net asset value of this
25    portfolio as of 12/2007 was $240,065; is that
```

## **CERTIFICATE OF SERVICE**

I, Beth L. Weisser, hereby certify that Plaintiff's Response Statement Regarding Calculation of the FBAR Penalty was served on all counsel of record via the Court's ECF system.

/s/ Beth L. Weisser
Beth L. Weisser

Date: January 19, 2021